*STATE of Indiana*
*County of Lake*
*vs*
*CEDRIC GERARD PARKER*

*Case #*
*45D08-2203-CM-001177*

2:23CV0362



**-FILED-**

OCT 20 2023

At _____ M
Chanda J. Berta, Clerk.
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## Notice of Removal

 This Notice of removal of the above-mentioned case from Lake County Superior Court to the United States District Court Northern District of Indiana. The basis for this removal is the presence of matters pertaining to Diplomatic and Treaty Law, Diversity Jurisdiction, Diversity of Citizenship, and the controversy being valued at more that $75,000.00. The following information outlines the grounds for removal:

1. Diplomatic and Treaty Law: The subject matter of the case involves issues directly related to Diplomatic and Treaty Law, which fall within the exclusive Jurisdiction of the Federal Courts. The interpretation and application of the International Treaties and agreements are essential to the resolution of the controversy.

2. Jurisdiction: The federal court has Jurisdiction over this matter, as it involves a federal question. The case raises substantial federal issues that require the expertise and guidance of the federal court system.

3. Diversity of Citizenship: The parties involved in this case are citizens/nationals of different states, and the controversy exceeds the jurisdictional threshold of $75,000.00. the Diversity of Citizenship between the parties further supports the removal to federal court (See attached documents titled "Counter Claim" and "Fee Schedule" filed in Lake County Superior Court).

In light of the above, we respectfully request that the state court proceedings be stayed, and the case be transferred to the United States District Court as stated above. Thank you for your attention to this matter. Should you have any questions or require further information, please do not hesitate to contact us.

Sincerely,

Omari Kaffee Bey, Hajib,
Minister of Foreign Affairs
hajibmsr@gmail.com
(930) 465-1060

*C/o 5651 Coventry LN.*
*Fort Wayne, IN*
*[46804]*



<u>**A Provincial State Government under the existing and pre-existing sovereignty of the Moroccan Empire**</u>

**Lamaj El,**
*Consul General*
Meru State Republic (Ante Indiana)
*(Sovereign Receiving State),*

c/o 5651 Coventry Lane, IN
Fort Wayne, IN, 46804
*(Tentative Capitol),*

Email: chiefmuftimsr@gmail.com
Region: Empire of Morocco

**Mr. Joseph R. Biden Jr.,**
*President of the U.S. Int'l organization*
**Mr. Antony Blinken,**
*U.S. Secretary of state*
**Mr. Merrick Garland,**
*U.S. Attorney General*
**Mr. Eric Holcomb,**
*Governor of the state of Indiana*
**Mr. Theodore Edward Rokita,**
*Attorney General for the state of Indiana*
**Mr. Thomas Henry,**
*Mayor, City of Fort Wayne*
Region: U.S. in the Empire of Morocco

# Meru State Republic (Ante Indiana)

## Office of the Consul General

<u>12th October</u>  2023

**RE:** Unlawful Arrest of a Diplomat in Violation of Diplomatic Relations and Consular Relations,
Mr. Amaris Maaz Bey, ex rel. CEDRIC GERARD PARKER , inter alia.

**Use of terms**

1) *"Moroccan Empire"* and *"Moorish Empire"* shall have the same meaning.
2) *"Moorish government"* and *"Moroccan Government"* shall have the same meaning.
3) *"Meru State Republic"* or "MSR" means a modern succession State by a Declaration of Independence and constitutional procedure in the Empire of Morocco.
4) "Contracting State" means a State bound to a Treaty, Convention, or arrangement by ratification, depository, and promulgation through diplomatic channels.
5) *"Moroccan national"* means a Moor that has returned to the Moroccan government by consent and renounced any naturalized citizenship of the United states, inter alia.

6) *"former Moorish subject"* means a Moor that has returned to a Moroccan government by consent and renounced any naturalized citizenship of the United states, inter alia.

7) *"former protégé"* means a Moor that has returned to a Moroccan government by consent and renounced any naturalized citizenship of the United states, inter alia.

8) *"United States of America"* means a dependent and privileged foreign Negotiating State in the Empire of Morocco, per the bilateral Treaty of Peace and Friendship 1787 & 1836.

9) *"United states"* means a foreign international organization in the Empire of Morocco.

10) *"state of Indiana"* means a foreign colonial chartered state in the Empire of Morocco.

11) *"uti possidetis juris"* means more generally to territorial sovereignty, the I.C.J. has enshrined the principle of the intangibility of frontiers inherited from the decolonization, as well as that of uti possidetis juris, whereby the legal title enjoys authority over effective possession as the basis of sovereignty; (Burkina Faso/Mali). An Erga omnes principle. When colonial borders transform into international frontiers.

## Background

On April 17, 2023, the colonial foreign charter known as the "STATE OF INDIANA" unlawfully detained, arrested, and charged (Mr. Amaris Maaz Bey, ex rel. CEDRIC GERARD PARKER), an authorized Diplomat and indigenous Moroccan national of the succession Meru State Republic, also known as ("MSR"). The colonial chartered state of Indiana denied Mr. Amaris Maaz Bey his right of privileges and immunities as an authorized Diplomat of the organic "receiving State" of Meru State Republic.

Whereas the receiving State of Meru State Republic, and the office of the Head of State, have authorized Mr. Amaris Maaz Bey to have qualified immunities in accordance with the receiving State laws as a natural corollary to the United Nations Resolution 1514 of 1960, the Vienna Convention on Diplomatic Relations of 1961, and the Vienna Convention on Consular Relations of 1963. Whereas the receiving State of Meru State Republic is a Contracting State party to the UN Resolution 1514 and to both Vienna Conventions of 1961 & 1963 by acceptance, ratification, depository, and promulgation.

For the record, Mr. Amaris Maaz Bey, rex el. CEDRIC GERARD PARKER presented his State issued Diplomatic credentials to the colonial powers known as the "state of Indiana" at the time of the traffic incident. Nonetheless, the colonial chartered STATE OF INDIANA arbitrarily and unlawfully arrested Mr. Amaris Maaz Bey, ex rel. CEDRIC GERARD PARKER, and failed to notify him of his rights to contact his receiving State representatives, contrary to the customs of Consular Notification and Access. Wherefore the colonial chartered STATE OF INDIANA breached the Vienna Convention on Consular Relations of 1963, Article 36 (1)(2). Whereas Article 36 (2) of the Vienna Convention states the following:

*"The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended."*

The receiving State rights of Meru State Republic are currently being infringed upon by a hostile foreign power also known as the ["*STATE OF INDIANA*"], inter alia. Whereas the extraterritorial jurisdiction by use of force and illegal acts by a colonial so-called state supervenes the impossibility of decolonization. Colonial acts of aggression against Moroccan human rights and the peremptory norms of international law (*jus cogens*) are contrary to the principles enshrined in the Charter of the United Nations of 1945 Article 73, the UN Resolution 1514 of 1960, the UN Resolution 2625 of 1970, and the various Treaties between the United States of America and the Moroccan Empire. It is important to note that Meru State Republic is a Contracting State party to the various Moorish Treaties.

Nonetheless, the receiving State of Meru State Republic is now seeking political arrangements by the competent Consul General of Meru State Republic in accordance with the UN Charter, Chapter VI, Article 33 (1). Whereas the Consul General a "friendly application" in accordance with the Treaty of Peace and Friendship of 1836, Article 24, inter alia. Nevertheless, the Treaty of Peace and Friendship, 1836, Articles 20 & 21, the competent Consul General is entitled to refer the parties to the competent Consular Court of Meru State Republic.

Recognizing that a friendly application of political arrangements regarding the immediate release of our Diplomat (Mr. Amaris Maaz Bey, ex rel. CEDRIC GERARD PARKER) shall be deemed an act of mediation and conciliation in good faith. However, if political efforts fail then the competent Consular Court shall prevail between the parties and their contentious dispute. If there are no conciliation efforts made in earnest by the disputing parties and their representatives of choice, then the receiving State of MSR shall exercise its competent Consular Court authority in accordance with the bilateral Treaty of Peace and Friendship of 1836, Articles 20 and 21 and the competent Consular Court authority per the multilateral Act of Algeciras, Articles 23, 101, and 102, inter alia. Affirming judicial settlement, because by the way and that way only can the Moroccan laws of the receiving State in the Empire of Morocco be enforced against the foreign United States of America, the United states international organization, and its colonial chartered STATE OF INDIANA, inter alia.

In the "*Case concerning rights of nationals of the United States of America in Morocco, Judgment of Aug. 27, 1952*" page: 202, the United states international organization was awarded by the I.C.J. a ["Limited"] jurisdiction in Morocco as long as the Moroccans i.e. the "Moors" acquiesced as naturalized "Moorish subjects" or "protégés" in accordance with the Madrid Convention of July 3, 1880, Article 15(2). However, the I.C.J. ruled on the means by which competent Moorish State governments could settle disputes in the Empire as follows:

*"In the absence of any treaty provisions dealing with this matter, it has been contended that a "right of assent" can be based on custom, usage, or practice. It is unnecessary to repeat the reasons which have been given for rejecting custom, usage, and practice as a basis for extended consular jurisdiction, and which are largely applicable to the "right of assent". It is, however, necessary to point out that the very large number of instances in which Moroccan laws were referred to the United States authorities can readily be explained as a convenient way of ensuring their incorporation in ministerial decrees binding upon the consular courts.*

*In that way, and in that way only, could these laws be made enforceable as against United States nationals so long as the extended consular jurisdiction was being exercised."*

Lastly, the Head of State for Meru State Republic does NOT recognize the United states international organization, nor the chartered STATE OF INDIANA as being an organic "State" or a sovereign in the Empire of Morocco.  Moreover, the United states international organization ["Foreign Policy"], *"forbids participation by the United States in the settlement of political questions which are entirely European in their scope."*  Therefore, any colonial extraterritorial jurisdictional acts regarding political affairs or judicial affairs against a Moorish State government and its nationals are considered void ab initio without prejudice.

The Declaration of Independence and the ratified, deposited, and promulgated Moorish Constitution have ushered in a new era of civil and criminal jurisdiction in the Empire of Morocco.  The Moors have given notice that the time has arrived for the United States to contemplate seriously about immediate decolonization reforms and mechanisms because the Moors are no longer in a stateless status of acquiescence or under a regime of capitulation.

### I. Introduction and Declaration of Constitutional Full Powers
#### Validity of sovereignty, independence, and self-governance per the Act of Algeciras "triple principle" preamble and the Charter of the United Nations Art. 73.

Greetings Mr. Biden, Mr. Blinken, Mr. Garland, Mr. Holcomb, Mr. Rokita, and Mr. Prince (hereinafter known as *"Americans"*, *"principals"* or *"agents"*).  I am Mr. Lamaj-Meliq El, the competent Consul General and authorized representative for the sovereign succession State of Meru State Republic (MSR).  The receiving State of Meru State Republic has Declared its Independence as an Act of decolonization vis-à-vis our ratified, deposited, and promulgated Moorish Constitution, flag, and seal in accordance with the Act of Algeciras "triple principle" preamble of April 7, 1906.  Our erga omnes act of self-governance is also enshrined in the Charter of the United Nations of 1945, Articles 1*(i)*, 55, 73, & 102; the United Nations Resolution 1514 of 1960, and Resolution 2625 of 1970, inter alia; see Annex-A: (*Provincial Moroccan State Constitution*), Annex-B: (*State Seal*), Annex-C: (*State Flag*), Annex-D: (*Empire of Morocco Flag*), and Annex-E: (*Public Inauguration video*), inter alia.

Wherefore Mr. Biden, Mr. Blinken, Mr. Garland, Mr. Holcomb, Mr. Rokita, and Mr. Prince, are principals and agents of their respective offices of the foreign United states international organization or the respective colonial chartered STATE OF INDIANA.  The principals and agents shall find in accordance with the Charter of the United Nations Article 102, that the Secretariat has on its file the various depository "Accessions" instruments regarding our Moroccan State.  The Accessions instrument shall confirm our Treaty Powers as a "Contracting State", et seq.

### II.1 Customary norms of the Vienna Convention on the Law of Treaties of 1969

The Vienna Convention of 1969 Article 2(*f*): "*Contracting State*" means a State which has consented to be bound by the treaty, whether or not the treaty has entered into force.

Reaffirming that our Contracting State has accepted, ratified, deposited, and promulgated the bilateral Treaty of Peace and Friendship of July 18, 1787, the bilateral Treaty of Peace and Friendship of September 16, 1836, the multilateral Madrid Convention of July 3, 1880, and the multilateral Act of Algeciras of April 7, 1906, inter alia. Upon your sincere quest and obligation to validate our organic modern State with the Secretariate of the United Nations, you shall find our full powers to be in full force and effect. It is important to note that our sovereign Constitution has expressed the delimitation lines regarding our new international Frontier and jurisdiction as the properly written instrument for the purpose of Independence and decolonization in the Empire of Morocco, et seq.

### II.2. Vienna Convention on the Law of Treaties of 1969, Articles 27 as follows:

*"Internal law and observance of treaties*

*A party may not invoke the provisions of its internal law as justification for its failure to perform a treaty. This rule is without prejudice to article 46."*

### II.3. Vienna Convention on the Law of Treaties of 1969, Article 46 as follows:

*"Provisions of internal law regarding competence to conclude treaties*

*1.    A State may not invoke the fact that its consent to be bound by a treaty has been expressed in violation of a provision of its internal law regarding competence to conclude treaties as invalidating its consent unless that violation was manifest and concerned a rule of its internal law of fundamental importance.*

*2.    A violation is manifest if it would be objectively evident to any State conducting its self in the matter in accordance with normal practice and in good faith."*

Recognizing that the organic sovereign Receiving State of Meru State Republic became a "Contracting State" by acceptance, ratification, depository, and promulgation in conformity with the principles of the Vienna Convention on the Law of Treaties of 1969.

Reaffirming that the internal municipal laws of the United states international organization and its colonial chartered STATE OF INDIANA are not applicable to the jurisdiction of Meru State Republic or applicable to our Moroccan nationals and authorized officials of the State. Whereas so-called "*internal municipal law*", "*default procedure rules*" or "*exclusionary of evidence rules*" of the colonial chartered STATE

OF INDIANA shall not be admissible as *"exceptionalist rules"* in order to circumvent the ordinary methods in dealing with the settlement of disputes in international law. Exceptionalism rules shall be rejected by the Receiving State of Meru State Republic and its competent Consular Court.

Also, "plausible deniability" regarding the obligations of international law and the provisional obligations of our binding bilateral and multilateral Treaties will not afford any foreign states, intergovernmental organizations, organs, principals, and their agent's relief at the appropriate time of adjudication by the competent Consular Court for crimes against humanity and the conspiracy to commit genocide, inter alia.

### III. A provincial Moroccan State protects human rights, self-determination, and the right to nationality per the Madrid Convention of July 3, 1880, Art. 15, clause (1).

I affirm that our Moroccan nationals are no longer stateless and no longer acquiesce to being naturalized *"subjects of Morocco"*, *"protégés"*, *"Moroccan subjects"*, "Moorish subjects", *"Moorish Americans"*, *"Americans"*, "sovereign citizens", "Black", "African-Americans", or *"former Moors"*, inter alia, of the United States of America, the United states international organization, or the colonial chartered STATE OF INDIANA in accordance with the Madrid Convention, Article 15 clauses (1) & (2) as follows:

> *"Any subject of Morocco who has been naturalized in a foreign country, and who shall return to Morocco, shall after having remained for a length of time equal to that which shall have been regularly necessary for him to obtain such naturalization, choose between entire submission to the laws of the Empire and the obligation to quit Morocco unless it shall be proved that his naturalization in a foreign country was obtained with the consent of the Government of Morocco.*
>
> *Foreign naturalization heretofore acquired by subjects of Morocco according to the rules established by the laws of each country, shall be continued to them as regards all its effects, without any restriction."*

Moroccan nationality was restored by an act of returning to a Moroccan government and affirming allegiance to the Constitution of the Moroccan State in the Empire as a natural corollary to the Madrid Convention, Article 15(1). Therefore, the Moroccan State is providing protection in the Empire of Morocco for "Moorish nationals", former "Moorish subjects" and former "proteges". The modern organic State territory was restored by the competent Moorish government officials in accordance with the customary norms of *uti possidetis juris*, without the prior *"assent"* of any foreign power in the Moorish Empire; as confirmed and authoritatively expressed in the International Court of Justice (ICJ) *"Case concerning rights of nationals of the United States of America in Morocco, Judgment of August 27th, 1952"* pages: 201-203), et seq.

Wherefore any denial of our succession State recognition, or lack of observance by the United states international organization, and its colonial chartered STATE OF INDIANA is contrary to international law and violates the various treaty provisions between the "signatory parties".

It is equally important to note that the United States of America (the de jure "*Negotiating State*"), remains a signatory party to the various Moorish treaties, conventions, and arrangements with the Moorish Empire, wherefore, the United States of America, the United states international organization, its organs, principals, agents, and persons shall be subject to Moroccan law with prejudice.

### IV. Privileges and Immunities for Moroccan Diplomats in the Empire and Abroad
**(Moroccan jurisdiction is foreign to Americans, and American jurisdiction is foreign to Moroccans, but all Americans are subject to the compulsory jurisdiction of Moroccan law.)**

Bearing in mind that Meru State Republic is the Receiving State and the indigenous Homeland of the Moroccan nationals and its authorized officials.  Wherefore our government officials' privileges and immunities shall be found in good and due form and shall be respected equally in accordance with the peremptory norms of international law (*jus cogens*).  Reaffirming that peremptory norms of erga omnes principles are inviolable and unalienable during decolonization.

Moreover, it is the duty of my office to assist our Moroccan nationals, diplomats, former Moorish subjects, and former proteges during any contentious disputes with the foreign and privileged United States of America, and its United states international organization, the colonial chartered STATE OF INDIANA, and its local chartered municipalities, organs, principals, agents, and persons, inter alia.

### V. Consular Notification and Access (CNA) as customary international law requirements.
**(Moroccan jurisdiction is foreign to Americans, and American jurisdiction is foreign to Moroccans, but all Americans are subject to the compulsory jurisdiction of Moroccan law.)**

The United states international organization has the obligation to inform and educate its federal, state, and local government officials, whether law enforcement, judicial, or other, insofar as they pertain to Moroccan nationals in the Empire of Morocco subject to the officials' authority or to matters within the officials' competence.  Compliance with these instructions and guidance will also help ensure that the United States can insist upon rigorous compliance with Moorish governments with respect to U.S. nationals in the Empire of Morocco and will help prevent both international and domestic litigation.  The U.S. Department of state should assist all federal, state, and local government officials in helping to achieve these objectives.

Bearing in mind that the State of Meru State Republic is preparing a Consular Notification and Access manual, in like manner, so that the principals and agents of the foreign organs can observe the arrangement between Moroccans and Americans in the Empire of Morocco.

## VI. Breach of the Vienna Convention on Consular Relations (VCCR)

**Inviolability human rights of Article 36 (b) of the VCCR of 1963 shall be respected in good faith by all States and their intergovernmental organizations, organs, and agents.**

Unfortunately, it has come to my attention on April 17, 2023, during a video chat phone call between Mr. Amaris Maaz Bey and Mr. Aqil Zephan Bey, the colonial chartered "STATE OF INDIANA" arbitrarily and unlawfully detained and arrested an authorized Diplomat of Meru State Republic. The Moorish diplomats' name is in fact: "Mr. Amaris Maaz Bey". It is further important to note that Mr. Amaris Maaz Bey is in fact a Moroccan national of our State, by validity of the State and the competent Consular Court at the time of his allegiance to the State Constitution. Mr. Amaris Maaz Bey was duly appointed to serve as the Deputy Wazir of our Moorish government. Therefore Mr. Amaris Maaz Bey has been duly authorized by our Head of State as having privileges and immunities during his personal and State function throughout our State and abroad without any interruption.

Furthermore, Mr. Amaris Maaz Bey presented his authorized "full powers" Diplomat identification as the Receiving State during a traffic stop but the colonial agents of the chartered STATE OF INDIANA proceeded to arrest Mr. Amaris Maaz Bey in breach of the objectives enshrined in the Vienna Convention of Diplomatic Relations of 1961 preamble as follows:

"*The States Parties to the present Convention,*
- *Recalling that peoples of all nations from ancient times have recognized the status of diplomatic agents,*
- *Having in mind the purposes and principles of the Charter of the United Nations concerning the sovereign equality of States, the maintenance of international peace and security, and the promotion of friendly relations among nations,*
- *Believing that an international convention on diplomatic intercourse, privileges and immunities would contribute to the development of friendly relations among nations, irrespective of their differing constitutional and social systems,*
- *Realizing that the purpose of such privileges and immunities is not to benefit individuals but to ensure the efficient performance of the functions of diplomatic missions as representing States,*
- *Affirming that the rules of customary international law should continue to govern questions not expressly regulated by the provisions of the present Convention..."*

The colonial agents of Indiana denied our Diplomat (Mr. Amaris Maaz Bey), the right to Consular Notification and Access requirements to contact our Moorish government representatives in violation of the Vienna Convention on Consular Relations of 1963 Art. 36(2). It is important to note that any so-called ["procedural default rule"] impose by the colonial chartered STATE OF INDIANA is null and void regarding Moroccan national's jurisdictional procedures in their own Homeland of Morocco.

**VII. Mr. Amaris Maaz Bey ex rel. *CEDRIC GERARD PARKER* immediate verification of allegiance to a modern Moroccan State in the Empire of Morocco and affirmation of renunciation of naturalized citizenship of the United states international organization.**

For the record, Mr. Amaris Maaz Bey, formerly known as ["*CEDRIC GERARD PARKER*"], has returned and consented to his allegiance to our provincial Moroccan State government in the Empire of Morocco. Moreover, the "former Moroccan subject" known as CEDRIC GERARD PARKER, affirmed and renounced (by written consent) his naturalized so-called "citizenship" of the United States of America, the United states international organization, and the colonial chartered STATE OF INDIANA in conformity with the Madrid Convention, Article 15 clause (1); see documentary evidence as follows: Annex-F: (*Affirmation of Renunciation of United States citizenship.*)  Annex-G: (*Affirmation of Allegiance to Meru State Republic.*) Annex-H: (*State-issued Identification.*)  Annex-I: (*State-issued Governmental Identification.*)

For the above-stated reasons, both the legal personality of the Diplomat known as "Mr. Amaris Maaz Bey" and the legal personality of the person known as "*CEDRIC GERARD PARKER*" (Case Number 45D08-2203-CM-001177), shall come under the lawful protections and jurisdiction of the Receiving State of Meru State Republic without delay.

Wherefore the limited jurisdiction of the United states international organization and the colonial chartered STATE OF INDIANA no longer apply with prejudice regarding Moroccans.

**VIII. Substantial warning from U.S. Supreme Court Chief Justice John G. Roberts, Jr.**
**IV.1. Noncompliance to customary norms of international law is a "costly toll" regarding the Vienna Convention on Consular Relations Art. 36 (1)(b)**

For the record, on June 28, 2006, the United states international organization Supreme Court decided on the case of SANCHEZ-LLAMAS v. OREGON, regarding internal municipal law, ratified international law, and the Vienna Convention on Consular Relations of 1963 Art. 36, inter alia, as follows:

> "*Chief Justice John G. Roberts, Jr.; SUMMARY: Article 36(1)(b) of the Vienna Convention on Consular Relations provides that if a person detained by a foreign country "so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State" of such detention, and "inform the [detainee] of his rights under this sub-paragraph." Article 36(2) specifies: "The rights referred to in paragraph 1 ... shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso ... that the said laws ... must enable full effect to be given to the purposes for which the rights accorded under this Article are intended."*

*Along with the Convention, the United States ratified the Optional Protocol Concerning the
Compulsory Settlement of Disputes, which provides: "Disputes arising out of the ...
Convention shall lie within the compulsory jurisdiction of the International Court of Justice [(ICJ)]."
The United States withdrew from the Protocol on March 7, 2005."*

### "Part A

Page 5 as follows: *"Under our domestic law, the exclusionary rule is not a remedy we apply lightly.
"[O]ur cases have repeatedly emphasized that the rule's* **'costly toll'** *upon truth-seeking and law
enforcement objectives presents a high obstacle for those urging application of the rule."*

### "Part B

Page 9 as follows: "The ICJ's interpretation of Article 36 is inconsistent with the basic framework of
an adversary system. Under the ICJ's reading of "full effect," Article 36 claims could trump not only
procedural default rules; but any number of other rules requiring parties to present their legal
claims at the appropriate time for adjudication. If the State's failure to inform the defendant of his
Article 36 rights generally excuses the defendant's failure to comply with relevant procedural rules,
then presumably rules such as statutes of limitations and prohibitions against filing successive
habeas petitions must also yield in the face of Article 36 claims. This sweeps too broadly, for it reads
the "full effect" proviso in a way that leaves little room for Article 36's clear instruction that Article
36 rights "shall be exercised in conformity with the laws and regulations of the receiving State." Art.
36(2), 21 U. S. T., at 101."

The above-stated U.S. case of 2006 makes the U.S. an alleged repeat offender from the perspective of
international law and especially after it immorally removed its consent in 2005 to be bound to the Vienna
Convention on Consular Relations Optional Protocol for the Pacific Settlement of Disputes. It's worth stating
that the cases from the International Court of Justice, e.g., the *LaGrand* case of 1999-2001 and the *Avena*
case of 2003-2004, place a bright light on United states international organization and its colonial chartered
states belligerents by principals, agents, and organs require significant and immediate political reforms or
be faced with adjudication for alleged crimes against humanity, inter alia.

It is important to note, that in any dispute between an American and a Moor that the compulsory
jurisdiction of the competent Consular Court of Meru State Republic shall prevail over the United states
Supreme Court, its inferior Courts, and any courts of the colonial chartered STATE OF INDIANA, inter alia, in
accordance with Articles 20 & 21 of the bilateral Treaty of Peace and Friendship of 1836 and the various
tribunal provisions of the Act of Algeciras.

### IX. Responsibility of UN Member States during decolonization in the Empire of Morocco

It should be noted that I recognize the bilateral Treaty of Peace and Friendship of 1787 and 1836, inter alia, is unique regarding our two foreign nations' binding efforts to cohabitate within each geographical Moroccan territory of the Empire. Our separate and diverse political, judicial, economic, and social reforms will not be an easy task to merge quickly between indigenous Moroccans and privileged Americans. Nevertheless, our combined efforts to seek peaceful applications, mechanisms, and legislative acts in good faith shall ultimately serve our collaborative best interest between Moors and Americans during decolonization. Obviously, the arduous task of decolonization is political in scope but foreign policy can be achieved as long as the principals of the United states international organization and its international and regional Bankers are willing to adhere to the substantive bilateral and multilateral contracts that they acquiesced and consented to in 1787, 1836, 1886, and 1906 with the Moorish Empire.

Keeping in mind that the United states international organization (under the guise of the United States of America), concluded, accepted, ratified, deposited, and promulgated the Charter of the United Nations in 1945. Wherefore Chapter XI, DECLARATION REGARDING NON-SELFGOVERNING TERRITORIES, Article 73; is, in fact, a contractual responsibility and arrangement as follows:

*"Members of the United Nations which have or assume responsibilities for the administration of territories whose peoples have not yet attained a full measure of self-government recognize the principle that the interests of the inhabitants of these territories are paramount, and accept as a sacred trust the obligation to promote to the utmost, within the system of international peace and security established by the present Charter, the well-being of the inhabitants of these territories, and, to this end:*

*a. to ensure, with due respect for the culture of the peoples concerned, their political, economic, social, and educational advancement, their just treatment, and their protection against abuses;*

*b. to develop self-government, to take due account of the political aspirations of the peoples, and to assist them in the progressive development of their free political institutions, according to the particular circumstances of each territory and its peoples and their varying stages of advancement;*
*c. to further international peace and security;*
*d. to promote constructive measures of development, to encourage research, and to cooperate with one another and, when and where appropriate, with specialized international bodies with a view to the practical achievement of the social, economic, and scientific purposes set forth in this Article; and*
*e. to transmit regularly to the Secretary-General for information purposes, subject to such limitation as security and constitutional considerations may require, statistical and other information of a technical nature relating to economic, social, and educational conditions in the territories for which they are respectively responsible other than those territories to which Chapters XII and XIII apply."*

Therefore the indigenous "inhabitants" known as the Moroccan nationals in the self governance State of Meru State Republic; geographically located in the Empire of Morocco, shall hold the United States of America and the United states international organization to its responsibility to NOT abuse former Moorish subjects and proteges that have returned to a Moroccan government by legislative acts of Declaration of Independence, Constitutional procedures that subsequently cause immediate renunciation of naturalized citizenship of a foreign country without prior "Assent'.

The UN Charter contract binds Member States to the moral, ethical, and substantive responsibility to assist competent Moorish governments during their varying stages of advancement.   Moreover, the succession-receiving State of Meru State Republic is convinced that the three branches of our Moorish government shall govern the "great enterprise" in harmony, and respect with the colonial chartered STATE OF INDIANA, inter alia.

## X. Pacific Settlement of Dispute
### UN Charter, Chapter VI, Article 33 (1)

The germane purpose and intent of this letter are to arrange a political peaceful settlement in "good faith" to have our Diplomat/National released from your custody and returned into the hands of our Moorish State representatives if by any chance our Diplomat/National ends up in your custody for any reason at any time. This mediation letter shall serve as a natural corollary with the Treaty Peace and Friendship Article 24 as follows:

> "If any differences shall arise by either of the parties infringing on any of the Articles of this treaty, peace and harmony shall remain notwithstanding, in the fullest force, until a friendly application shall be made for an arrangement; and until that application shall be rejected, no appeal be made to arms..."

Wherefore my office of the State is extending mediation and conciliation arrangements in accordance with the Charter of the United Nations, Chapter VI, Article 33; in lieu of arbitration and judicial settlement by the competent Consular Court's Orders via the Act of Algeciras of 1906, Articles 23, and 102 as follows:

> "Article 23. The accomplices in the offenses set forth in Articles 20, 21, and 22 shall be liable to the same penalties *as the principals*. The elements determining complicity shall be adjudged according to the laws of the court in charge of the case."

> "Article 102. Every confiscation, fine, or penalty must be imposed on foreigners by consular jurisdiction, and on Moorish subjects by Shereefian jurisdiction."

**12 |** Unlawful Arrest of a Diplomat in Violation of Diplomatic Relations and Consular Relations in the case concerning
Amaris Maaz Bey, ex. rel. CEDRIC GERARD PARKER: _____ - _____ - _____ CG-AR-700.001

However, in good faith, I hereby extend an opportunity to "the principals", municipalities, organs, and agents to prove that the privileged "*Americans*" are no longer committing acts of abuse, human rights violations, or supervening the impossibility of performance of the Vienna Convention of Diplomatic Relations, or the Vienna Convention of Consular Relations while the competent Moorish governments are at "varying stages of advancement". I welcome your collective responses to settle this political dispute without further injury to our Diplomat and State. However, my office is not interested in lengthy discussions regarding our Diplomat, (Mr. Amaris Maaz Bey, ex rel. *CEDRIC GERARD PARKER)*      , but instead, we seek timely resolutions to occur on or before 7 days upon receipt.

Please take into strong consideration that this diplomatic communication should be added to my file of documentary evidence and, more mailed to the UN Secretary-General in accordance with Article 73(e) of the Charter. The office of the Consul General is entitled to motion the Competent Consular of Meru State Republic and possibly refer the continuous dispute with the UN Security Council, and the International Court of Justice in accordance with Chapter VI, Article 36, of the UN Charter, inter alia.

## XI.  For the purpose of peace and security during decolonization; a regional agency has been created to serve as an international organization to be known as the "Convention in the Empire of Morocco Wazir Regional Council"

In accordance with the Charter of United Nations Article 33 (1), the several Moorish States including the State of Meru State Republic have recognized each other and ratified, deposited, and promulgated a multilateral "regional agency" to be known as the "*Convention in the Empire of Morocco Wazir Regional Council*". The Convention is also known as the "*Wazir Regional Council*" or the "*WRC*". The WRC comprises the competent Moorish Member States and their respective Heads of State and staff. The Member States recognize the Convention as being an *"intergovernmental organization"* with privileges and immunities to carry out its functions on behalf of the Member States to ensure peace and security throughout the Moorish Empire (see Annex-J: *Convention in the Empire of Morocco Wazir Regional Council*).

Wherefore the multilateral Convention entitles the Member States to become "erga omnes parties" regarding any legal nature that may call for a "Declaration of Intervention", and submission to the competent Consular Court or the compulsory International Court of Justice.

My office found it proper to notify the Wazir Regional Council Members to potentially assist with the mediation and arbitration, if need be, between Meru State Republic and the colonial foreign STATE OF INDIANA, inter alia. The collective efforts of the several Moorish States shall be known as "the United States of Morocco" alliance from the east coast to the west coast in the Empire of Morocco, inter alia.

## XII.  Judicial Settlement

As a reminder, I would also bring to your attention the two competent Consular Court orders for your awareness and appropriate legislative mechanisms.  The competent Consular Court of Meru State Republic found it proper to issue Orders regarding the case concerning (*"Meru State Republic v. United States of America, the United States, and the former STATE OF INDIANA; dated _____ T B D _____"*); and the case concerning (*"Meru State Republic v. the STATE OF INDIANA, the United States, and the United States of America; dated _____ T B D _____"*) , et seq.  Whereas the two competent Consular Court Orders have consequences, if not adhered to, that include fines, penalties, and confiscation in accordance with the laws of the Moorish Court.

### XIII. Conclusion

The competent authority of Meru State Republic is requesting a virtual meeting with the foreign "Principles" that represent the de facto United states international organization, and the colonial chartered STATE OF INDIANA, in lieu of the de jure officials of the United States of America.  Please let my office know a date and time that works best for you.  We look forward to hearing from you on or before 7 days after receipt of this document.  Sincerely,

/s/ *Lamy-mel El*

Office of the Consul General
Meru State Republic

CC:
Mr. António Guterres, United Nations, Secretary-General
Mr. Federico Villegas, United Nations Human Rights Council, President
Mr. Aqil Zephan Bey, Meru State Republic, Head of State
Ms. Markisha Hill-El, Meru State Republic, Legislator
Mr. Cicero Eugene Beemon Bey, Meru State Republic, Chief Judge
Ms. Nova Elu El, Wazir Regional Council, Executive Director
Mr. Marcus Maymun El-Marzuq, Wazir Regional Council, Inspector General

**15 |** Unlawful Arrest of a Diplomat in Violation of Diplomatic Relations and Consular Relations in the case concerning
Amaris Maaz Bey, ex. rel. CEDRIC GERARD PARKER: _____ - _____ - _____ CG-AR-700.001

## CERTIFICATE OF SERVICE

addressed as follows:

**_(The principals)_**

United States of America/United states Joseph
R. Biden Jr., President
1600 Pennsylvania Ave NW Washington, DC
Contact@cea.eop.gov

Jerome Prince, Mayor, City of Gary
401 Broodway., STE #203,
Gary, IN 46402

Eric Holcomb, Governor of Indiana
200 W. Washington St., Rm. 206, Indianapolis,
IN  46204

United states Department of state
Antony Blinken
2201 C Street, NW
Washington, D.C. 20520  secretary@state.gov

Todd Rokita Attorney General of Indiana
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN 46204

United states Department of Justice Merrick B.
Garland, Attorney General
950 Pennsylvania Avenue, NW Washington, DC
20530
askdoj@usdoj.gov

/s/ _Lavy-melij El_

Office of The Consul General
Meru State Republic
Chiefmuftimsr@gmail.com

# MERU STATE REPUBLIC

## CIRCLE 7 – ANNEX – A

. . .

# THE LAW OF SANKOFA

## The official Constitution for Meru State Republic Georgia (A Provincial State Government under the

## existing and pre-existing Sovereignty of the Moroccan Empire).

# COVERPAGE



# Meru State Republic

(A Provincial State Government under the existing and pre-existing Sovereignty of the *Moroccan Empire*)

## Law of Homecoming

**Preamble:**

We, the Moors in Morocco, the Mothers and Sons of Northwest Amexem, Northwest Alkebulan, the Northgate; standing on our Five Points of Light: **Love, Truth, Peace, Freedom and Justice**, in order to restore a balanced order, just protections, reciprocal wealth and cultural integrity for ourselves and our Jus Sanguine heirs, do establish this *Law of Homecoming* (constitution) for the Organic State, Meru State Republic.

- NOTE: Initial Statement for the Law of Homecoming (Constitution) expressing the nature and intention of the provincial government; Who we are and why we are establishing this constitution? Land-Nationals-Freedom-Protection-Rights-Generations-Moors- Birthrights Pedigree-calling on our Ancestral Wisdom coming out of the ancient Law of Nations - **Love, Truth, Peace, Freedom and Justice.**

  We the Moors of Morocco, who have been classified, within the 'United States of America's Census Bureau' constructed race category, as 'black', 'negro', 'colored', 'brown', 'African American', 'Indian', 'Moorish Subjects', Moorish Protégé', and 'Sovereign Citizens' do not consent to the politically denationalizing of Moors, in this or any other manner, for it violates the International Peremptory Rights (Jus Cogens) of the Indigenous Peoples, the Moors in Morocco.

**Dominions:**

The Dominions for the **Meru State Republic** (MSR) include all Land, Air and Waterways within Latitude: 37.4 degrees North to 41.4 degrees North by Longitude: 84.4 degrees West to 88.4 degrees West. Our Earth Dominions are 146 miles long (East to West) and 276 miles wide (North to South). The total area of Land and Waterways is 36,420 square miles (35,870 square miles of Land and 550 square miles of Water). The lowest point is 320 feet above sea level (known as Pose County) and the highest point is 1,257 feet above sea level (known as Hoosier Hill in Franklin Township). **These are the dominions from the center of the Earth through our divine footprint into the farthest reaches of the cosmos, upon which we Thrive, through which we Heal and in which we are Restored.**

- NOTE: Land, not territory. Earth, not plots. Dominions, not Real Estate. Parcels, not Property. For Land, see definition in Black's Law Dictionary 4th Edition (pg. 573)

**Our Inalienable Rights:**

Every Woman, Man and Child; all Mothers and Sons, are born with certain inalienable and unalienable Rights, endowed by the CREATOR, having nothing but its' own Rights, expressed in and throughout its' creation. These Rights can NEVER be taken away, diminished, altered, or levied by any government. Thus, no contract, fraud, sufferance nor under color of law can any unalienable Right be Removed from a Moorish National of Meru State Republic (MSR). These Rights include, yet are not limited to:

*The Right to:*

1. Life, Freedom, Health and the Pursuit of Happiness
2. Contract, or not to Contract
3. Earn a living through the fair exchange of one's work for compensation.
4. Travel by Land, Air and Water, in ordinary course of one's affairs.
5. Privacy and confidentiality, free from unwarranted invasion.
6. Claim and Hold Land Allodial without trespass.
7. Self Defense when threatened with harm, loss or deceit.
8. Due Process of Law, with Notice and Opportunity to Defend.
9. Bear Arms and participate in an official militia for the Defense of the Nation irrespective of any prior legal status.
10. Be Secure in one's Person, Houses, Papers and Effects against unreasonable searches and seizures.
11. No Warrants being issued, unless upon probable cause, supported by an Oath or Affirmation, and particularly describing the place to be searched and the individual(s) or thing(s) to be seized.
12. Be Presumed Innocent, suffering NO detention or arrest, no search or seizure, without reasonable cause.
13. Remain silent when accused, to avoid self-incrimination.
14. Equality in the eye(s) of Law, and to equal voice in the Courts.
15. An Imperial Court of Competent National Jurists.
16. Appeal in Law against conviction or sentence, or both.
17. Expose knowledge necessary to one's Rights and Freedoms.
18. Peaceful Association, Assembly, Expression of Dissent and Protest.
19. Practice a Religion and to have Beliefs, of one's choosing.
20. Love, Consensual Matrimony and to raise a family.
21. Security from abuse, persecution, tyranny, and war.
22. Refuse to kill under command, by reason of conscience.
23. Live in Peace and be left alone when abiding by Law.
24. Our Status, Pedigree and National Standing being perpetually endured.

25. Promote and Provide Erudition on our cultural diversity, richness of civilization and contributions ab initio, to humankind on Earth.

26. Be perpetually free from discrimination of any kind.

27. Repossess Lands and Resources resulting from colonization and forced/coercive dispossession of Lands and Resources.

28. *Our Lands, Dominions and Resources not being abridged.*

29. Enter into Treaties, Agreements, Accords and Constructive Agreements with any and/or all States and Nations of the World, Earth and Cosmos.

30. Exercise control and Oversight of developments affecting our Lands, Dominions and Resources for the protection of the environment with economic reciprocity to our Nation.

31. Establish Institutions for Education in Culture, Science, Spirituality, Traditional Healing, Child Raising, Agriculture, Construction, National and International Law as well as, any other field(s) of study, necessary or prudent for the ongoing development and Prosperity of our Nation

32. Live in a demilitarized region, where **Love, Truth, Peace, Freedom and Justice** are the Foundations for the Social Order.

33. Full Entitlement without discrimination to all human Rights, recognized in International Law, Natural Law and Organic Law.

34. The Full Enjoyment, as a collective and/or as individuals, of all human Rights and Fundamental Freedoms as recognized in the unabridged Charter of the United Nations, the Universal Declaration of Human Rights, the United Nations Declaration on the Rights of Indigenous People, the Declaration of the Rights of the Child, and International Human Rights Law.

The Rights of every Moor derive from our Spiritual, Scientific, Cultural, Economic, Political, Social, Scientific, Chronological and Philosophical Structures.

Rights that we, the Autochthonous, Aboriginal and Indigenous people, Moors from the Land, have by pedigree accrued throughout time immemorial are hereby included in this, the *Law of Homecoming.*

These Unalienable/Inalienable Rights are NOT the only ones protected under this *Law of Homecoming.* Rights not expressed here, yet still inherent, shall be just as inviolable as the ones delineated. The Strength of the people is in knowing their Rights. It is incumbent on this Provincial Government to assure that all Moorish Nationals, within our dominions, have been given erudition on these Rights and how to live by them.

May Meru State Republic (MSR) be a beacon of Light for the Restoration of the Moorish Empire.

- NOTE: Rights Divinely Ordained, Inalienable, Unalienable, Autochthonous, Aboriginal and Inherited by Blood Pedigree. Mothers and Sons / every Woman, Man and Child. All naturally born and created "womb"-men are Mothers.

**A R T I C L E  ( 1 ):**

**Wazir Al'Rais**

1. The Provincial Divan, as expressed in this *Law of Homecoming*, shall include three (3) Branches of Governance. Herein shall be covered the **Executive Branch**.

   a) Wazir Al'Rais shall be the official Title for the Highest Office in Government.

   b) The Executive Office includes a Deputy, Secretariate, as well as other offices required for the executive administration for Provincial Affairs.

   c) The Wazir Al'Rais and the offices under their oversight shall be governed by this *Law of Homecoming*.

   d) The Executive Office is afforded the Privilege of being the Supreme Officer and Spokesperson, appointing a Secretariate, Ambassador(s) and addressing issues of National Importance, while *simultaneously working with the Dalil Aziz for the signing and institution of bills, which facilitates services focused on the well-being of the people.*

   e) The Wazir Al'Rais has the power to veto a decision by the Dalil Aziz, <u>if the Vote is by less than 67% (2/3rds) affirmative.</u>

2. The Wazir Al'Rais shall be constrained from using the office for personal gain, exercising undue influence, influence peddling, receiving emolument from a foreign power, receiving bribes, appointing offices not approved by the Dalil Aziz, issuing executive orders and requiring personal oaths of allegiance. Also, the Wazir Al'Rais is constrained from adding offices and executive departments without the approval by the Dalil Aziz. All officers under the Secretariate, elected or appointed, shall be held on this standard.

3. **The Requirements for being Elected as Wazir Al'Rais shall be:**

   a) The Candidate must be at least 30 years old.

   b) The Candidate must be a Matrilineal National at least six (6) years.

   c) The Candidate must have demonstrated competency in Moorish Science and Culture, Moorish Chronology, National Civics, as well as Appreciation for the Well Being of the people.

   d) The Candidate must have lived within the provincial Dominions for a minimum of three (3) consecutive years.

   e) The Candidate cannot be of subject status within any imperial/provincial government.

4. **Elections for the Wazir Al'Rais** shall take place May 15th of each 5th year starting with the year 2022.

   a) Inauguration for the Wazir Al'Rais shall be on May 29th of the same year.

   b) **The Term of Office for the Wazir Al'Rais** shall be: (5) Years.

   c) The Wazir Al'Rais may <u>service consecutive terms of office</u>, yet they may run for the same office after a full term has passed. Additionally, they may only serve in the same office <u>three</u> (3) times in <u>one</u> (1) lifetime.

5. Secretariate Offices shall be appointed by the Wazir Al'Rais and installed under Oath, immediately following election and confirmation by the Dalil Aziz.

   a) **Executive Branch Office(s):**

      i. **Deputy Wazir Al'Rais (Successor Prime Minister)**
         I. Term : (5) Years

      ii. ii. Dar-Al' Wazirate (Secretariate): (Non-elected positions, appointed by Wazir Al'Rais)
         I. Term : (2) Years

      iii. **Wazir of the Baitul Mal (State Treasurer)**
         I. Term : (3) Years

      iv. Hajib (Minister of Foreign Affairs)

      i.      **Term : (5) Years**
         a.    Cadi (Deed Tax Assessor)
            i.   **Term : (3) Years**
         b.   Rasm (Sec. of National Standing) (Appointed)
            i.   **Term (3) Years**
         c.   Rasm (Sec, of Trusts and Estates) (Appointed)
            i.   **Term : (3) Years**
         d.   Rasm (Sec. of Transportation) (Appointed)
            i.   **Term : (3) Years**
         e.   Mudif Eamun (Sec. Public Relations) (Appointed)

v. **Mufti (Consul General)**
    l. **Term : (5) Years**

vi. **Sutrah (Sec. for Defense)**
      i.      **Term : (5) Years**
         a.   Shariff (Enforcer) (Appointed)
            i.     **Term : (3) Years**

vii. **Nabi – Tasawwuf (Secretary of Education and Spiritual Science)**
      *i.      Term : (3) Years*

viii. **Wahy – Liham (Mind & Heart) (Sec. of Health and Family Well-Being)**
      i.      **Term : (3) Years**

ix. **Baitul Katib (Head of House of Scribes)**
      i.      **Term : (3) Years**
         a.   Katib Al'Rais (Chief Scribe)
            i.   **Term : (2) Years**
         b.   Rayut Haqi (Sec. Multi-Media & Design)
            i.   **Term : (2) Years**

6.   In the event the office of the Wazir Al'Rais is vacated either by resignation, impeachment, incapacity or death, the following protocols shall apply:

   a)  In case of Resignation and Impeachment, the Wazir Al'Rais shall have Thirty (30) Days to finalize any and all pending matters requiring their attention. The Thirty (30) Day Period can be reduced to immediate dismissal with approval by the Seyaraha and Head Qazi.

   b)  In the case of Death or Incapacity (terminal illness, physical debilitating condition or mental incapacity) the line of succession shall apply.

7.   The line of succession is:

   a)  Deputy Wazir Al'Rais
   b)  Hajib
   c)  Seyaraha
   d)  Mufti
   e)  Sutrah

The Successor who fills the vacated position of Wazir Al'Rais shall do so for the remainder of the existing term. The position vacated as a result of the succession shall be filled by the appointment from the Wazir Al'Rais with the approval from the Dalil Aziz and the Head Qazi.

NOTE: Executive Branch (powers of delegation, enforcement and execution, as well as constraints on the powers so conferred) (protocols for electing the Executive Branch Officials) (Qualifications for holding Executive Office).

## ARTICLE ( 2 ):

**Seyaraha**

1.  The Provincial Divan as expressed in this Law of Homecoming shall include three (3) Branches of Governance. Herein shall be covered the **Legislative Branch**.

2.  The Seyaraha shall be the head of the **Dalil Aziz** and shall Manage the Administrative Affairs.
    - The **Seyaraha**, with the assistance of the **Dalil Aziz**, shall have general oversight of all provincial government operations.
    - The Legislative Power of the provincial government shall be vested in one (1) Authoritative Council hereafter known as the **Dalil Aziz** (Matriarchal Council)
    - The Seyaraha shall be elected, as their first order of business, by the Dalil Aziz body, every three (3) years, on May 15th of each year.
    - The election of the Seyaraha shall be affirmed by the Wazir Al'Rais and the Head Qazi.
    - **The Term of Office** for the Seyaraha will be: (3) Years.
    - The Seyaraha may service consecutive terms of office. Additionally, they may only serve in the same office three (3) times in one (1) lifetime.
    - The Seyaraha shall be the determining vote in case of a tie.

3.  The **Dalil Aziz** shall introduce, vote on, and present to the Wazir Al'Rais for signature/autograph, any and all bills which pass through their body.
    - Bills for consideration may be presented to the Dalil Aziz from within the body, from the Wazir Al'Rais and form the Moorish Nationals who are the 'body politic' for the provincial government.
    - The Dalil Aziz shall oversee and initiate, if necessary, Impeachment Proceedings (for removal) upon any Executive, Dalil Aziz or Judicial Officer, who violates and abuses their powers in contradiction of this Law of Homecoming.

4.  The Seyaraha & Dalil Aziz Members shall be constrained from admitting patriarchs into their ranks, using the office for personal gain, exercising undue influence, influence peddling, receiving emolument from a foreign power, receiving bribes, appointing offices not approved by the Dalil Aziz, issuing special interest bills presuming to confer civil rights, and requiring personal oaths of allegiance.

5.  The Dalil Aziz shall be charged with overseeing the National Trust.
    - The Dalil Aziz Members shall appoint three (3) Matrilineal Nationals as Trustee for the National Trust, and those three (3) Trustees are then to appoint a Manager of the Treasury, who shall be contracted to facilitate the accounting of revenues, reporting and distributions from the Treasury, as per contractual obligations.

6.  The Requirements for being Elected to the **Dalil Aziz** shall be:
    - The Candidate must be a Matriarch (Womb-Man/Woman by natural birth and design)
    - The Candidate must be at least Twenty-Three (23) years of age.
    - The Candidate must be a Matrilineal National for at least four (4) years.
    - The Candidate must have demonstrated competence in Moorish Science and Culture, Moorish Chronology, National Civics, as well as, Appreciation for the Well-Being of the people.
    - The Candidate must have lived within the provincial dominions for a minimum of three (3) years.
    - *The Candidate cannot be of subject status within any imperial/provincial government.*

7.  Elections for the **Dalil Aziz** Members shall take place May 15th of each 5th year, starting with the year 2022.

- There shall initially be five (5) legislative members; two (2) of which are elected to five (5) year terms and three (3) of which elected to three (3) year terms. Thus, the Dalil Aziz shall have a staggered election protocol.
- Every five (5) years, two (2) members of the Dalil Aziz are elected to a five (5) year term, beginning 2022.
- Every five (5) years, three (3) members of the Dalil Aziz are elected to a five (5) year term beginning 2027
- The initial election shall have three (3) members of the Dalil Aziz elected to a three (3) year term, and two (2) elected to a five (5) year term.

8. The number of Dalil Aziz Members may be increased as population and demand increases, from five (5) to seven (7) to nine (9) to thirteen (13).
- Thirteen (13) shall be the maximum number in the Dalil Aziz unless so changed by a *Law of Homecoming* Convention.

9. *Oath taking for the Dalil Aziz shall be on May 15th of the same year.*
- The Seyaraha & Dalil Aziz Members may serve consecutive terms of office, however, they may only serve in the same office three (3) times in one (1) lifetime.

10. In the event the office of the Seyaraha is vacated either by Resignation, Impeachment, Incapacity or death, the following protocols shall apply.
- In case of Resignation and Impeachment, the Seyaraha shall have Thirty (30) Days to finalize any and all pending matters requiring their attention. The Thirty (30) Day Period can be reduced to immediate dismissal with approval by the Wazir Al'Rais and Head Qazi. The remaining Dalil Aziz members shall vote a new Seyaraha to fill the remaining term of the vacating Seyaraha, who then must be approved by the Wazir Al'Rais and the Head Qazi.
- In the case of Death or Incapacity (terminal illness, physically debilitating condition or mental incapacity) the remaining legislative members shall vote a new Seyaraha to fill the remaining term of the vacating Seyaraha, who then must be approved by the Wazir Al'Rais and the Head Qazi.
- Any Dalil Aziz Member vacating office shall be obligated to the same protocol as the Seyaraha.

  -NOTE: Dalil Aziz (protocols to bring a bill to the floor, all bills must be in alignment with this Allodial Constitution, any bill to the contrary notwithstanding) (the protocols for choosing who will represent who or what sub dominions within the Nation) (Qualifications for holding legislative office).

## ARTICLE ( 3 ):

### Qazi

1. The Provincial Divan as expressed in this Law of Homecoming (Constitution) shall include three branches of governance. Herein shall be covered the *Judicial Branch.*
2. The Qazi shall be the head of the Dar-ul' Adl and shall Manage its Administrative Affairs.
- The Judicial Power of the provincial government shall be vested in one (1) Supreme Court hereafter known as the **Dar-ul' Adl** with authority herein given to establish no more than twelve (12) District Dar-ul' Adls as population and demand require.
- Each District Dar-ul' Adl shall be overseen by a Qazi/Dar-ul' Adl Justice.
- *As a new District Dar-ul' Adl is established, a new Qazi is added to oversee its function.*

3. Initially there shall be only three (3) Qazi authorized to oversee and administer one (1) Dar-ul' Adl and as needed, for three (3) District Dar-ul' Adls, serving the landed regions corporately know as Atlanta, Georgia. No inferior courts or administrative tribunals are authorized.

   - There shall be three (3) Qazi to serve as Judicial Officers overseeing civil actions, criminal actions, family actions, consular actions, contract arbitration, estate disposition cases and other procedural actions as required.

4. The Qazi & Dar-ul' Adl (Judicial Branch Members) shall be constrained from using the office for personal gain, exercising undue influence, influence peddling, receiving emolument from a foreign power, receiving bribes, appointing offices not approved by the Dalil Aziz, ruling against the constitution and requiring personal oaths of allegiance.

5. The requirements for being elected to the Dar-ul Adl shall be:

   - The Candidate must be at least 30 years of age.
   - The Candidate must be a Matrilineal National for at least six (6) years.
   - The Candidate must have demonstrated appreciation for Moorish Science and Culture, Moorish Chronology, National Civics, as well as, the Well-Being of the people.
   - The Candidate must have lived within the provincial Dominions for a minimum of three (3) consecutive years.
   - The Candidate cannot be of subject status within any imperial/provincial government.

6. Elections for the Qazi/Dar-ul Adl Justices shall take place 15th of each twentieth (20th) year starting with the year 2022, 2042, 2062.

   - The Term of Office for the Head Qazi will be: Twenty (20) Years
   - There shall initially be three (3) Qazi/Dar-ul Adl Justices; one (1) of which is elected to an eight (8) year term, and one (1) of which is elected to a fourteen (14) year term, and one (1) of which is elected to a twenty (20) year term.
   - Thus, the Qazi/Dar-ul Adl Justices shall have a staggered election protocol:
     i. Every Twenty (20) years, one (1) Qazi is elected to a twenty (20) year term beginning 2022, 2042, 2062.
     ii. Every Fourteen (14) years, one (1) Qazi is elected to a fourteen (14) year term beginning 2022,2036, 2050.
     iii. Every Eight (8) years, one (1) Qazi is elected to an eight (8) year term beginning 2022, 2030, 2038.
   - Oath taking for the Qazi shall be on May 15th of the same year.
   - The Dar-ul' Adl Members may serve consecutive terms of office, and they may only serve in the same office for two (2) terms in one lifetime.

7. In the event the office of the Head Qazi is vacated either by Resignation, Impeachment, Incapacity or Death, the following protocols shall apply:

   - In the case of resignation and impeachment, the Head Qazi shall have thirty (30) days to finalize any and all pending matters requiring their attention. The thirty (30) day period can be reduced to immediate dismissal with approval by the Wazir Al'Rais and Seyaraha. A new Head Qazi shall be chosen by the remaining Qazi; after a new Head Qazi is chosen with the Wazir Al'Rais and Dalil Aziz approval, to fill the remaining term of the vacating Head Qazi.
   - In the case of Death or Incapacity (terminal illness, physically debilitating condition or mental incapacity) a new Qazi is chosen to fill the remaining term of the vacated Qazi, with the approval of the Wazir Al'Rais and the Seyaraha, and subsequently the new body of the Qazi shall choose a Head Qazi.

8. All Nationals holding offices in OUR NATION must be under Oath "to uphold, support and reflect the *Law of Homecoming* for Meru State Republic (MSR) working unwaveringly to assure that all laws, principles and decisions are carried out for the good of the people". This Oath shall be administered by the Head Qazi.

9. When the Oath is for the Head Qazi, the Seyaraha shall administer the Oath.

    NOTE: Judicial Branch (protocols for reviewing bills to ensure conformity with constitutional standards) (Protocols for choosing judiciary) (Qualifications for holding judicial office)

# ARTICLE ( 4 ):

## National Trust

1. The National Trust for the provincial government shall be established as an International, Divinely Established, Sovereign, Allodial, Express Trust.

2. The Purpose of the National Trust for the provincial government is to provide for management, oversight, reporting, accounting for revenues and distributions for and from Treasury.

3. The Treasurer for the National Trust is in the capacity of General Manager for the National Trust with limited and delegated authority over the Treasury.
   - The Treasurer reports directly to the Trustees for the National Trust.
   - The Dalil Aziz shall choose and contract <u>three</u> (3) Matrilineal Nationals who shall serve as Trustees for the National Trust.
     - i. These Trustees report directly to the Dalil Aziz.
   - The Trustees are responsible for delegating the terms and conditions for the Treasurer/General Manager, Agents and Contract Workers.

4. The National Trust shall provide full disclosure as to all revenues and distributions (not of a personal nature, so as to protect privacy) and to facilitate confidence in the government's ability and intention to fulfill its mission honorably.
   - The plan for revenue management shall be as follows:
     - i. From 100% of revenues in a given period either monthly, quarterly or bi-annually (as the Trustees shall see fit), the revenues shall be distributed as follows:
       1. 10% to be contributed to various *Moroccan Empire* development funds which support Moorish Erudition, Provincial Government Development, Moorish Housing, and Moorish Family Support.
       2. 10% to remain as reserves in the Treasury
       3. 40% to be used for Governmental Management
       4. 40% to be distributed among the registered Moorish Nationals from the *Prior accounting period (this may also include those of Patrilineal National Status, yet their amount would be half that of a Matrilineal National).*
   - The Accounting Method used for managing the accounting for revenues and distributions shall be simple debit/credit accounting; no double-entry accounting.

5. Any and all Allodial Claims to Lands within our Dominions shall be held in Allodial, Aboriginal, Paramount and Clear Perfect Title. The National Trust shall be the 1st Lien Holder on all Lands claimed Allodial by the government and by the Moorish Nationals.
   - The National Trust, via the Trustees, shall liaison with the Hajib (Minister of Foreign Affairs) to facilitate the Conveyance of Claims and Titles required for movable and immovable assets.

- The National Trust in conjunction with the Hajib (Minister of Foreign Affairs) shall facilitate the Claims on Abandoned Lands within our Dominions.

6. **The National Trust and Hajib (Minister of Foreign Affairs) shall establish protocols for interfacing with foreigners who are residing in our Dominions, parcel by parcel, to facilitate amicable and equitable taxes and revenue.**
   - The Hajib (minister of Foreign Affairs) shall operate on behalf of the National Trust by asserting our Right of Review/Oversight/ and Approval or not for Developments within our provincial Dominions.

7. **Money, Currency, Fiat, Federal Reserve Notes, Private Commercial Paper and Crypto Currencies are all forms of exchange used in Trade and Commerce.**
   - **Money is:**
     - i. Gold and Silver Coinage
       1. One (1) Troy Ounce of Silver, one (1) Troy Ounce of Gold, also broken down into smaller ounce denominations are for the full payment of all debts.
   - Currency can be any commodity used and agreed upon by the trading or commercial partners to use the consummate trade and commercial intercourse.
   - Fiat is a term used to describe all other forms of money/currency besides Gold and Silver.
     - i. Fiat is (counterfeit) due to the fact that it is only valued by the consent of the users, having no intrinsic value by its own merit.
   - Federal Reserve Notes or bills or notes of exchange issued by the Federal Reserve to be used for the revenue accounting, management and taxation upon the "United states" citizenry.
     - i. This is the common form of exchange instrument used in North-West Amexem, North America.
   - Private Commercial Paper is any form of negotiable instrument used to satisfy obligations in Trade or Commerce. These obligations can be represented as bonds, bills of exchange, promissory notes, deeds of trust, letters of credit, debentures, as well as, investment instruments such as stocks, bonds, commodities, currencies, and securities of all types.
   - Crypto Currencies, electronic currencies, block chain and all forms of electronic currency exchange mediums are new to the environment of International Trade and Commerce. These currencies are primarily used by countries that have chosen a corporate as opposed to a Sovereign Status.
   - Meru State Republic (MSR) shall reserve the Right to use Real Money and Currency described above in order to facilitate the required Trade and Commerce Agreements and Arrangements for the provincial government.
   - Meru State Republic (MSR) reserves the Right to Coin/Mint Money as needed.

**A R T I C L E  (  5  ) :**

**General Provisions**

1. The MSR Government shall be fully Representative. No one serving in an office shall receive a salary, *compensation, or other financial gift structure. Every official is entitled to receive within reasonable* limits, with documentation, reimbursement for expenses incurred while carrying out government affairs.

- Each official is also a Matrilineal National and will receive the same benefit from national distributions that all other Matrilineal Nationals receive.

2. Every elected or appointed official works for the people who are the Nation. Any attempt to confer upon oneself a Title other than the title they are elected to is prohibited and will subject the official to investigation for infractions against the people, their office, and the National Government.

3. There shall be two (2) status' within MSR. Those status' are:
   - Matrilineal
     1) A Matrilineal National; one who is by birthright of their Moorish Mother.
     2) One who has declared and proclaimed their Nationality Standing as a Moorish Matrilineal National.
     3) One who has made a specific pledge via Oath and Allegiance to this Provincial Government within the dominions of the greater *Moroccan Empire*, thus denouncing any prior allegiance and other to a foreign power.
   - Patrilineal
     1) A Patrilineal National; one who is by DNA of a Moorish Father claiming a Moorish Standing.
     2) One who has made a specific pledge as a Patrilineal National under an Oath and Allegiance to this provincial government, within the Dominions of the greater *Moroccan Empire*.
     3) Patrilineal National Status prohibits one from holding a National Office, receiving full allotment from the National Trust, *and holding Allodial Title to Aboriginal Land,*
     4) One who denounces any prior allegiance to a foreign power.

4. In every society, there are crimes which affect the well-being of the people in adverse ways. Five (5) crimes shall herein be addressed as anathema to the civil function and free expression in our nation.
   - These five (5) crimes are:
     1) Theft of Personal or National Property
     2) Damaging Personal, or National Property
     3) Causing physical harm to any Woman, Man and/or Child.
     4) Causing the Death via Murder of any Woman, Man and/or Child
     5) Treason against the Nation and the Nationals
   - All the crimes listed must have an injured party, victim and/or personal witness to the fact, which can be attested to by Oath and Affirmation.
   - The Qazi shall oversee the Adjudication of the case regarding the crimes committed.
       1) The sentence required by the Qazi shall be unique to each situation for the first three (3) crimes. Thereafter, the crimes of murder and Treason have specific penalty and punishments mandated.
   - The Sutrah shall oversee the required investigation into each of these crimes along with the Shariff. Their investigation protocols shall be in respect of all the Matrilineal National's Patrilineal National's unalienable Rights; *and their findings shall be presented to the Qazi for* preparing the necessary court proceedings.
   - The first three (3) crimes, Theft, Property Damage and Causing Physical Harm, must have an injured party, affidavit of fact attesting to the crime by the victim, evidence corroborating the affidavit of fact, and at least one (1) witness.

- The fourth (4th) crime of Murder must have evidence showing proof of deceased person, evidence showing cause of death, and witnesses corroborating the evidence beyond a shadow of doubt.
  1) Capital Punishment shall be administered with cause by the Provincial Government.
  2) The Administered Consequence for the crime of Murder shall be in two (2) categories:
     1. The Murder was committed by a Matrilineal National or Patrilineal National upon a citizen of a foreign nation:
        a. After complete investigation and adjudication, the Matrilineal National or Patrilineal National is found guilty of Murder, they shall be turned over to the offended nations' officials for further sentencing and administering of set consequence. Thus, there shall be complete and irrevocable expulsion of any evidence of national allegiance on file with the Provincial Government. They are turned over to the offended nation's officials with a provision to follow International Law and Treaties in their Adjudication and Sentencing. Notification of this Consequence shall follow them throughout the *Moroccan Empire*.
     2. The Murder was committed by a Matrilineal National or Patrilineal National against a Matrilineal National or Patrilineal National:
        a. In this instance, there shall be a complete investigation. If the Matrilineal National or Patrilineal National is found guilty of Murder after complete Investigation, Adjudication and Sentencing, the Administered Consequence of Death shall be carried out immediately.
        b. The fifth crime is Treason against the Nation and the Moorish Nationals, which carries a penalty of Capital Punishment/Consequence. To be found guilty of Treason, two (2) witnesses to the overt act against the Nation shall be sufficient to initiate a full investigation into the Treason. The two (2) witnesses must each provide an affidavit of fact detailing in explicit fashion the entire scope of what was witnessed, including all parties involved. After complete Investigation, Adjudication and Sentencing, the Administering of Consequence shall be carried out immediately

5. Whenever conduct of an official is in question, whether for an official position or for disciplinary action, the parameters used for making such assessment and evaluation as to their capacity for Behavioral Compliance, Conformity and Allegiance to the *Law of Homecoming* (Constitution), the Dalil Aziz shall be guided by:
   - The Five (5) Points of Light; *Love, Truth, Peace, Freedom and Justice*;
   - The Seven Hermetic Principles being 1. Mentalism, 2. Correspondence, 3. Vibration, 4. Polarity, 5. Rhythm, 6. Cause and Effect, and 7. Gender;
   - The Seven Virtues of Maat; 1. Truth, 2. Justice, 3. Propriety, 4. Harmony, 5. Balance, 6. Reciprocity, and 7. Order
   - The 10 Principles of Maat, to have; 1. Control of Thought, 2. Control of Action, 3. Devotion to One's Purpose, 4. Faith in One's Ability to Teach the Truth, 5. Faith in One's Ability to Assimilate the Truth, 6. Faith in One's Ability to Wield the Truth, 7. Freedom from

Resentment Under Persecution, 8. Freedom from Resentment under wrong, 9. Ability to Distinguish Right from Wrong, and 10. The Ability to Distinguish the Real from the Unreal

The 42 Declarations of Maat/Innocence:

1) Not have I done wrong.
2) Not have I despoiled (stolen by force).
3) Not have I robbed.
4) Not have I Slain a Man or Woman.
5) Not have I acted unjustly.
6) Not have I diminished charitable offerings.
7) Not have I despoiled the things of the Divine.
8) *Not have I spoken lies.*
9) Not have I carried off food.
10) Not have I afflicted anyone.
11) Not have I wasted my seed or abused my sexuality.
12) Not have I caused the shedding of tears.
13) Not have I sown seeds of regret.
14) Not have I transgressed or been an aggressor.
15) Not have I acted deceitfully.
16) Not have I desolated ploughed Lands.
17) Not have I violated someone's privacy.
18) Not have I set my mouth in motion against any woman or man.
19) Not have I raged, except with just case.
20) Not have I seduced or been intimate with the wife of a man.
21) Not have I seduced or been intimate with the husband of a woman.
22) Not have I polluted myself (Mind, Body, Spirit) 23) Not have I caused terror.
24) Not have I committed offense.
25) Not have I inflamed myself with rage.
26) Not have I made myself deaf to the words of Right and Truth. 27) Not have I caused grief.
28) Not have I acted insolently.
29) *Not have I stirred up Strife.*
30) Not have I judged hastily.
31) Not have I been an eavesdropper.
32) Not have I been too talkative.
33) Not have I harmed or done evil.
34) Not have I cursed my Ancestors.
35) Not have I fouled or wasted Water.
36) Not have I spoken with an arrogant voice.
37) Not have I cursed the CREATOR.
38) Not have I committed Theft.
39) Not have I defrauded the offerings.
40) Not have I stolen offerings from the Ancestors.
41) Not have I stolen food from the baby's mouth, or wronged the Divine Community. 42) Not have I slaughtered animals.

The Five (5) Points of Light, Seven (7) Hermetic Principles, Seven (7) Virtues of Maat, Ten (10) Principles of Maat, and the Forty Two (42) Declarations of Maat/Innocence stand as the Foundation of our Spiritual, Cultural and Societal Development.

## ARTICLE ( 6 ):

**Supremacy Clause**

1.  **The Supreme Law of the Land is this** *Law of Homecoming,* as well as, all Treaties made or which shall be made under our National Seal and flag. Our Delegation of Authority for establishing this Law of Homecoming are:
    *   *The Great Law of Peace* (also known as the Iroquois Confederacy).
    *   The Treaty of Peace and Friendship (made between the United States of America and the Sultan of Morocco, 1786/87 and 1836).
    *   The Jay Treaty 1794.
    *   The Treaty of Amity, Commerce and Navigation (made between Great Britain and the United States of America, 1794).
    *   *The Treaty of Peace and Friendship (made between the United States and the Bey and Subjects of Tripoli of Barbary, 1797).*
    *   General Treaty (made between Great Britain and Morocco (the Empire) signed in English and Arabic language, at Tangier, December 9th of 1856).
    *   Right of Protection in Morocco (July 3rd of 1880).
    *   General Act of the International Conference of Algeciras (April 7th of 1906).
    *   *Charter of the United Nations of 1945.*
    *   Vienna Convention on Diplomatic Relations of 1961.
    *   Vienna Convention on Consular Relations of 1963.
    *   Vienna Convention on the Law of Treaties of May 23rd 1969 and April 24th 1970 (entered into force on January 27th of 1980).
    *   The Universal Declaration of Human Rights.
    *   *United Nations Declaration on the Rights of Indigenous Peoples.*
    *   The Law of Nations Universal jus sanguine claim of Self Determination.
    *   The Allodial Right to Establish our own Cultural, Economic, Political, Social and Civilized Society on our own Land.

2.  This Provincial Government and all Moorish Nationals therein shall stand upon the Five (5) Points of Light; **Love, Truth, Peace, Freedom and Justice.** We the Autochthonous, Aboriginal and Indigenous people within our Dominions here in the Empire of Morocco, Northwest Amexem, Northwest Alkebulan and the Northgate, shall remain true to the ideals of Law and Jurisprudence herein reflected.
    -NOTE: Supreme Law of the Land, including the power to make Treaties with other provincial governments or tribal governments given they accept an Allodial and Jus Sanguine Status.

## A R T I C L E ( 7 ):
### Amendment Protocol

1. **The power to amend this *Law of Homecoming* is in the hands of the Dalil Aziz.**

   a. A vote of 85% by the Dalil Aziz and the Matrilineal Nationals voting, respectively, is required in order to approve any bill which would amend this Law of Homecoming.

   b. Each and Every Matrilineal National must be given the opportunity to cast a vote, either yay or nay, regarding the amending bill in question.
   
       -NOTE: Delineation of powers to amend this constitution with circumstances and protocols for amendment.

2. **Original Ratification Date:** November 4, 2022

3. **Last Amended:** April 22, 2023

   a. Ratifying Parties:

       i    Aqil Zefan Yazeen Bey  l  Wazir Al'Rais (Prime Minister)

       ii   Amaris Abdullah Maaz Bey | Deputy Wazir Al'Rais (Deputy Prime Minister)

       iii  Saniya Ishani Bey  l  Seyaraha (Speaker of the House, Head of Dalil Aziz)

       iv  Cicero Eugene Beemon Bey  l  Qazi (Chief Judge)

       v   Demarcus Harris El  l  Hajib (Minister of Foreign Affairs)

       vi  Olmec Bey  l  Mufti (Consul General)

For the Official Ratifying of this *Law of Homecoming*, True/Actual Autographs and supporting Right Thumb Prints of the Meru State Republic (MSR) Government Officials on the following page. If this is a (copy) of the Original, please see copied autographs instead, below.

Autograph: _____

                                    Aqil Zefan Yazeen Bey

                              (Wazir Al'Rais: Prime Minister)

Autograph: _____

                                    Saniya Ishani Bey

                  (Seyaraha: Speaker of the House; Head of Dalil Aziz)

Autograph: _____

                             Cicero Eugene Beemon Bey

                                 (Qazi: Chief Judge)

Autograph: _____

                                  Demarcus Harris El

                        (Hajib: Minister of Foreign Affairs)

Autograph: _Amaris Maaz Abdullah-Bey_

Amaris Maaz Abdullah-Bey

(Deputy Wazir Al'Rais: Deputy Prime Minister)

Autograph: _Olmec Bey_

Olmec Bey

(Mufti: Consul General)

We, the herein parties, Meru State Republic (MSR) State Government officials and Moorish Nationals, have Declared, on Oath, to absolutely and entirely renounce and adjure all previous and/or current allegiance and fidelity to any foreign prince, potentate, secret organization, or state, and to solely support and defend this _Law of Homecoming_ (Constitution). We have also declared recognition and authorization of MSR, and will maintain True Faith and Allegiance thereto. We impose this obligation upon ourselves voluntarily without mental reservation or purpose of evasion

Ase'. Islam. Gratitude

## MERU STATE REPUBLIC

Demarcus Harris El
Hijab | Minister of Foreign Affairs
E: HajibMSR@gmail.com  |  T: 1.317.690.5421



# MERU STATE REPUBLIC
## CIRCLE 7 - ANNEX - B

• • •

### STATE SEAL

**Description:** The seal for all MSR State Nationals is the Round Green, Red and White emblem to represent the Dominant Power over the Land. The emblem in the center of the seal depicts a jaguar, peony flower, feather and star to represent the historical territory of Meru State Republic. The green star in the center represents the Moroccan Empire. The word Love, Truth, Peace, Freedom and Justice are written in the white circle with a gold underlining that represents our 5 principles. Finally, "MERU STATE REPUBLIC" is the title of the State government.   Meru State Republic's Seal serves as representation within the bounds of, but not limited to, Latitude: 40°16'24.6072" N by Longitude: -86°7'37.1116" W.

---



---

**34 |** Unlawful Arrest of a Diplomat in Violation of Diplomatic Relations and Consular Relations in the case concerning Amaris Maaz Bey, ex. rel. CEDRIC GERARD PARKER: 12ᵗʰ - OCT - 2023     CG-AR-700.001

# MERU STATE REPUBLIC
## CIRCLE 7 - ANNEX-C

### • • •

### STATE FLAG

**Description:** The Provincial State Flag, with the green background, Maroon and White horizontal and vertical forming a circle. A Golden emblem encompassed by Golden stars depicts a jaguar, peony flower, feather and star to represent the historical ancient traditions, symbols and customs. The Golden moon and star represent the birth of a masculine principle from a feminine principle. Meru State Republic's Seal serves as representation within the bounds of, but not limited to, Latitude: 40°16'24.6072" N by Longitude: -86°7'37.1116" W.



**35 |** Unlawful Arrest of a Diplomat in Violation of Diplomatic Relations and Consular Relations in the case concerning
Amaris Maaz Bey, ex. rel. CEDRIC GERARD PARKER: 12ᵗʰ. OCT. 2023    CG-AR-700.001

# MERU STATE REPUBLIC
## CIRCLE 7 - ANNEX - D

• • •

### PUBLIC INAUGURATION

**Description:** The Public Inauguration for Meru State Republic was held on
October 22nd, 2022 initiated from within the chartered colony city & state of Fort Wayne,
Indiana but now has return back within the existing and pre-existing *Moroccan Empire,* as
*shared jurisdictions* in Northwest Amexem; the Northgate.

Below is a Link to the recording of the Inauguration, hosted on YouTube.

_____

# Link: https://youtu.be/YMswVNj1EXY

# MERU STATE REPUBLIC
## CIRCLE 7 – ANNEX - E

· · ·

### MOROCCAN FLAG

**Description:** The flag for all Moorish Nationals is, and shall remain, the Red Canopy with the Green five-pointed Star, which represents the "Sovereignty Flag of Morocco", Al Moroccan – the Mother of Flags and Evidence and Declaration of our Natural Descent to this land, the *Moroccan Empire,* Northwest Amexem; the Northgate.



This current flag being used in our documents has been unlawfully and unilaterally utilized as a state flag for another state called "The Kingdom of Morocco." We, "The Moroccan Empire," will be revealing a new flag for "The Moroccan Empire" October 14th, 2023 as shown on the STATE IDENTIFICATION CARDs displayed below.

CIRCLE 7 - ANNEX - F and G

. . .

## NATIONAL ALLEGIANCE & OATH

&

## (STATE) OATH & ALLEGIANCE and OFFICE

**The official 'National Allegiance & Oath' for all Moorish Nationals under the existing and pre-existing Sovereignty of the Moroccan Empire .**

**As well as,**

**The official (State 'Oath & Allegiance and Office' for all Moorish Nationals Registered and Recognized**

**by**

**Meru State Republic ( A Provincial State Government under the existing and pre-existing Sovereignty of the Moroccan Empire .**

**C O V E R   P A G E**



# MERU STATE REPUBLIC

**A Provincial State Government under the existing and pre-existing sovereignty of the Moroccan Empire.**

## NATIONAL OATH & ALLEGIANCE

### OATH

I, *Amaris Maaz Abdullah-Bey*, am a Moorish National, Al Moroccan, Moorish Sovereign, part and parcel with Meru State Republic (A Provincial State Government under the existing and pre-existing sovereignty of the Moroccan Empire). I, under my Moorish Appellation, freely and without coercion renounce allegiance and oath to any other Nation, State, Potentate, Monarchy, or secret society.

I freely take and declare this Oath to Meru State Republic.

### ALLEGIANCE

As derived from the 'Circle 7' - Chapter XXX - 1, 2 - Social Duties – 1st Party

1. When thou considereth thy wants, when thou beholdeth thy imperfections, acknowledge his goodness, Oh son of humanity, who honored thee with humanity, endowed thee with speech, and placed thee in society to receive and confer reciprocal helps and mutual obligations, protection from injuries, thy enjoyments of the comforts and the pleasures of life; all these thou oweth to the assistance of others, and couldst not enjoy but in the bands of society.

2. It is thy duty, therefore, to be a friend to mankind, as it is thy interest that man should be friendly to thee. I pledge my Allegiance, by these tents, to Meru State Republic

I, *Amaris Maaz Abdullah-Bey*, provide the following information voluntarily as supporting evidence of my Moorish Nationality, Status, Pedigree and Birthright. This information shall serve as Census information for substantiation and verification for the body politic of Meru State Republic.

MSR. GOVD. NOA.001                    Page 1 of 3

# JUSTICE

**As derived from the 'Circle 7' - Chapter XXXI – Justice – 1st Party**

1. The peace of society dependeth on justice; the happiness of individuals, on the safe enjoyment of all their possessions.

2. Keep the desires of thy heart, therefore, within the bounds of moderation; let the hand of justice lead them aright.

3. Cast not an evil eye on the goods of thy neighbor; let whatever is his property be sacred from thy touch.

4. Let no temptation allure thee, nor any provocation excite thee to lift up thy hand to the hazard of his life.

5. Defame him not in his character; bear no false witness against him.

6. Corrupt not his servant to cheat or forsake him; and the wife of his bosom, O tempt not to sin.

7. It will be a grief to his heart, which thou canst not relieve; an injury to his life, which no reparation can atone.

8. In thy dealings with men, be impartial and just; and do unto them as thou wouldst they should do unto thee.

9. Be faithful to thy trust and deceive not the man who relieth upon thee; be assured, it is less evil in the sight of Allah to steal than to betray.

10. Oppress not the poor, and defraud not of his hire, the laboring man.

11. When thou selleth for gain, hear the whispering of conscience, and be satisfied with moderation; nor from the ignorance of thy buyer take any advantage.

12. Pay the debts which thou oweth: for he who gave thee credit, relieth upon thine honor; and to withhold from him his due, is both mean and unjust.

13. Finally, O son of society, examine thy heart, call remembrance to thy aid; and if in any of these things thou hath transgressed, make a speedy reparation, to the utmost of thy power

## CONSANGUINITY INFORMATION

Mother's Name: _PAMELA ANN PERRY_    National Descent: _Morocco_

Matrilineal Grandmother's Name: _Sella Mae Perry_    National Descent: _Morocco_

Matrilineal Great Grandmother's Name: _N/A_    National Descent: _N/A_

Father's Name: _William Keith Parker_    National Descent: _Morocco_

My Natural Born Day is _24th_ (day) _January_ (month) _1982_ (year) _10:00pm_ (time).

Mailing Location: C/O _2334 Tennessee St_

_Gary IN 46407_

Email: _cparker6000@icloud.com_  Phone: _(219) 381-8818_

I am a: Matrilineal National  [✓]    Patrilineal National  [✓]

I autograph this National Allegiance & Oath, affirming, from this moment forward, that I do honor and abide by this covenant. Thus, under penalty of perjury, I understand that penalties shall be assessed for any false statement made herein.

Date: _4-22-2023_

I am: _Amaris Maaz Abdullah-Bey_
Affirming Moorish National's Printed Appellation

_Amaris Maaz Abdullah-Bey_
Affirming Moorish National's Autograph

I witness: _____
Witnessing Moorish National's Autograph

By Order of the Court: _____
Cicero Eugene Beemon Bey,
Qazi (Chief Judge) Consular Court of
Meru State Republic
(Full Autograph)

Penalties may include but are not limited to financial assessment, relinquishment of property, loss of elected or appointed position in the provincial State government of Meru State Republic. The government for Meru State Republic reserves the right to EXILE a Moorish National who has committed Treason against the State.



# MERU STATE REPUBLIC

(A Provincial State Government under the existing and pre-existing Sovereignty of the *Moroccan Empire*)

# OATH OF OFFICE

**As part derived from the 'Law of Homecoming' – Preamble (MSR.GOVD.NOO.002)**

We, the Moors in Morocco, the Mothers and Sons of Northwest Amexem, Northwest Alkebulan, The Northgate and standing on our Five Points of Light: Love Truth, Peace, Freedom, and Justice, In order to restore a balanced order, just protections, reciprocal wealth and cultural integrity for ourselves and our Jus sanguine Heirs, do Affirm Pride and Allegiance to the Organic State, Meru State Republic (ante Indiana).

**Oath of Office:**

I _Amirds Maaz Abdullah-Bey_ do affirm that I will support and defend the Constitution of Meru State Republic, against all enemies, Foreign and Domestic. I Affirm that I will bear True Faith and Allegiance to the same. I Affirm that I take this obligation freely , without any mental reservation or purpose of evasion; and that I will Well, and Faithfully discharge the duties of the office, on which I am about to enter; that being:

_Deputy Wazir_ , all law.

Date: _4-22-2023_

Autograph: _Amaris Maaz Abdullah-Bey_
AffirMing Moorish National's Autograph

I Witness: _Samijea Ebram Bey_
Witnessing Moorish National's Autograph

By Order of the Court: _Cicero Eugene Beemon Bey_
Cicero Eugene Beemon Bey
Qazi (Chief Judge) Consular Court of
Meru State Republic
(Full Autograph)

MSR.GOVD.NOO.002 Page 1 of 1



## MERU STATE REPUBLIC

(A Provincial State Government under the existing and pre-existing Sovereignty of the *Moroccan Empire*)

# Oath of Allegiance

I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the Meru State Republic, against all enemies, foreign and domestic, that I will bear true faith and allegiance, to Meru State Republic, and that I will take this obligation freely, without any mental reservation or purpose of evasion, and that I will well, and faithfully discharge, the duties of the office, of which I am about to enter, that being

_____; all law.

The undersigned state that this Oath of Allegiance, as well as the facts contained herein are true and correct.

Executed on this _____ day of _____ in the year _____

_____
Autograph

_____
Printed Appellation

The autographing of this document (Oath of Allegiance | MSR.GOVD.OA.0001) has been witnessed by an Official of Meru State Republic.

Autograph: _____

Full Printed Appellation: _____

Page **1** of **1**

# MERU STATE REPUBLIC

## CIRCLE 7 - ANNEX – H

. . .

## State-Issued Government Identification

## The official State Government Identification cards for all Moroccan MSR National under the existing and pre-existing Sovereignty of The Moroccan Empire.

This current flag being used in our documents has been unlawfully and unilaterally utilized as a state flag for another state called "The Kingdom of Morocco." We, "The Moroccan Empire," will be revealing a new flag for "The Moroccan Empire" October 14th, 2023 as shown on the STATE IDENTIFICATION CARDs displayed below.

## C O V E R P A G E



In The Event this National
Identification card is
found, please return to:

Meru State Republic
State Government
5651 Conventry Lane
Fort Wayne, IN [46804]



In The Event this National
Identification card is
found, please return to:

Meru State Republic
State Government
5651 Conventry Lane
Fort Wayne, IN [46804]



In The Event this National
Identification card is
found, please return to:

Meru State Republic
State Government
5651 Conventry Lane
Fort Wayne, IN [46804]











# M E R U   S T A T E   R E P U B L I C

## C I R C L E 7 - ANNEX – H and I

**. . .**

### State-Issued Government Credential Identification; on

### The official State Government Credential Identification for all Moroccan MSR Government Nationals under the existing and pre-existing Sovereignty of The Moroccan Empire

.

## C O V E R P A G E



### Meru State Republic

#### Moroccan National



# DIPLOMAT

Official Title: Wazir
(Prime Minister)

ID# ART150703-1                     Aqil Zefan Yazeen Bey

Term Began                  Term Expires
2022                        2027





The bearer of this Governmental Credential is an Authorized Diplomat of the contracting receiving State of Meru State Republic (MSR), in The Empire of Morocco. Pursuant to international law, Diplomatic Agents SHALL be immune from ALL forms of search, requisition, confiscation, arrest, detention, expropriation, and ANY other form of interference, whether by the executive, administrative, judicial, or legislative action of ANY foreign State, international organization, organ, or agent. Consular Notification and Access (CNA) SHALL be granted with delay. Contact the Minister of Foreign Affairs and or The Consul General at The Embassy of Meru State Republic at c/o 5651 Coventry Lane., Fort Wayne, IN [46804] - (219) 613-7758

---



### Meru State Republic

#### Moroccan National

# DIPLOMAT

Official Title: Deputy Wazir
(Prime Minister)

ID# ART150703-9                   Amaris Maaz Abdullah Bey

Term Began                  Term Expires
2022                        2027





The bearer of this Governmental Credential is an Authorized Diplomat of the contracting receiving State of Meru State Republic (MSR), in The Empire of Morocco. Pursuant to international law, Diplomatic Agents SHALL be immune from ALL forms of search, requisition, confiscation, arrest, detention, expropriation, and ANY other form of interference, whether by the executive, administrative, judicial, or legislative action of ANY foreign State, international organization, organ, or agent. Consular Notification and Access (CNA) SHALL be granted with delay. Contact the Minister of Foreign Affairs and or The Consul General at The Embassy of Meru State Republic at c/o 5651 Coventry Lane., Fort Wayne, IN [46804] - (219) 613-7758

---



### Meru State Republic

#### Moroccan National

# DIPLOMAT

Official Title: Chief Qazi
(Chief Judge)

ID# ART150703-7                  Cicero Eugene Beemon Bey

Term Began                  Term Expires
2022                        2027





The bearer of this Governmental Credential is an Authorized Diplomat of the contracting receiving State of Meru State Republic (MSR), in The Empire of Morocco. Pursuant to international law, Diplomatic Agents SHALL be immune from ALL forms of search, requisition, confiscation, arrest, detention, expropriation, and ANY other form of interference, whether by the executive, administrative, judicial, or legislative action of ANY foreign State, international organization, organ, or agent. Consular Notification and Access (CNA) SHALL be granted with delay. Contact the Minister of Foreign Affairs and or The Consul General at The Embassy of Meru State Republic at c/o 5651 Coventry Lane., Fort Wayne, IN [46804] - (219) 613-7758

---



**Meru State Republic**

*Moroccan National*

# DIPLOMAT

Official Title: Chief Mufti
(Consul General)



Lamaj-meliq EL

ID# ART150703-77

Term Began
2023

Term Expires
2028

The bearer of this Governmental Credential is an Authorized Diplomat of the contracting receiving State of Meru State Republic (MSR), in The Empire of Morocco. Pursuant to international law; Diplomatic Agents SHALL be immune from ALL forms of search, requisition, confiscation, arrest, detention, expropriation, and ANY other form of interference, whether by the executive, administrative, judicial, or legislative action of ANY foreign State, international organization, organ, or agent. Consular Notification and Access (CNA) SHALL be granted with delay. Contact the Minister of Foreign Affairs and or The Counsul General at The Embassy of Meru State Republic at c/o 5651 Coventry Lane., Fort Wayne, IN [46804] - (219) 613-7758

 



**Meru State Republic**

*Moroccan National*

# DIPLOMAT

Official Title: Hajib
(Minister of Foreign Affairs)

Omari Kaffue Brown Bey

ID# ART150703-1593

Term Began
2023

Term Expires
2028

The bearer of this Governmental Credential is an Authorized Diplomat of the contracting receiving State of Meru State Republic (MSR), in The Empire of Morocco. Pursuant to international law; Diplomatic Agents SHALL be immune from ALL forms of search, requisition, confiscation, arrest, detention, expropriation, and ANY other form of interference, whether by the executive, administrative, judicial, or legislative action of ANY foreign State, international organization, organ, or agent. Consular Notification and Access (CNA) SHALL be granted with delay. Contact the Minister of Foreign Affairs and or The Counsul General at The Embassy of Meru State Republic at c/o 5651 Coventry Lane., Fort Wayne, IN [46804] - (219) 613-7758

 



**Meru State Republic**

*Moroccan National*

# DIPLOMAT

Official Title: Seyaraha
(House Speaker)

Markisha Christiano Lasquale EL

ID# ART150703-2

Term Began
2023

Term Expires
2024

The bearer of this Governmental Credential is an Authorized Diplomat of the contracting receiving State of Meru State Republic (MSR), in The Empire of Morocco. Pursuant to international law; Diplomatic Agents SHALL be immune from ALL forms of search, requisition, confiscation, arrest, detention, expropriation, and ANY other form of interference, whether by the executive, administrative, judicial, or legislative action of ANY foreign State, international organization, organ, or agent. Consular Notification and Access (CNA) SHALL be granted with delay. Contact the Minister of Foreign Affairs and or The Counsul General at The Embassy of Meru State Republic at c/o 5651 Coventry Lane., Fort Wayne, IN [46804] - (219) 613-7758

 

**49 |** Unlawful Arrest of a Diplomat in Violation of Diplomatic Relations and Consular Relations in the case concerning Amaris Maaz Bey, ex. rel. CEDRIC GERARD PARKER: _____ - _____ - _____ CG-AR-700.001

# MERU STATE REPUBLIC

## CIRCLE 7 - ANNEX – J

• • •

## Conven3on in the Empire of Morocco
## The Wazir Regional Council

1. Done at Meru State Republic January 30, 2023;

2. Ratification advised by the Seyaraha and the House of Dalil Aziz of Meru State Republic on April 1, 2023,

3. Ratified by the Wazir of Meru State Republic on April 1, 2023,

4. Ratification of Meru State Republic deposited with the Secretary General of the United Nations on April 24, 2023,

5. Ratification of Meru State Republic deposited with the Secretariat of the Wazir Regional Council on April 24, 2023,

6. Proclaimed by the Wazir of Meru State Republic on April 24, 2023,

7. Entered into Force with respect to Meru State Republic on April 24, 2023

*COVER PAGE*



# Convention in the Empire of Morocco
## The Wazir Regional Council
### Done on 30 January 2023

1. Done at Meru State Republic Colorado January 30, 2023;
2. Ratification advised by the Seyaraha and the House of Dalil Aziz of Meru State Republic Georgia on April 1, 2023,
3. Ratified by the Wazir of Meru State Republic Georgia on April 1, 2023,
4. Ratification of Meru State Republic Georgia deposited with the Secretary-General of the United Nations on April 24, 2023,
5. Ratification of Meru State Republic Georgia deposited with the Secretariat of the Wazir Regional Council on April 24, 2023,
6. Proclaimed by the Wazir of Meru State Republic Georgia on April 24, 2023,
7. Entered into Force with respect to Meru State Republic Georgia on April 24, 2023.

**We the competent Moors of the Empire of Morocco,** do hereby establish a Multilateral Convention by the Member States parties to the Convention, and have combined our efforts to reign in the order of unity and accountability throughout the Moorish Empire,

Bearing in mind that the Wazir Regional Council and its recognized Member States shall be guided by the norms of treaties and international law, with a view to preserving the purpose and principles concerning the sovereign equality of modern Moroccan States, and the maintenance of international peace and security,

Believing that regional council reforms on friendly diplomatic intercourse, privileges, and immunities shall contribute to the development of consular relations between all Moorish States, and between foreign dependent states of the United States of America in Morocco, irrespective of their differing constitutional and social systems,

Realizing that the purpose of such diplomatic intercourse, privileges, and immunities is not to benefit individuals but to ensure the efficient performance of the functions of diplomatic relations and consular relations by respecting the principles of Moroccan law as binding on native Moroccans and privileged Americans,

Acknowledging that the Constitution for the United States of Morocco has yet to be concluded and enacted for the purpose of establishing a central government to represent the Moroccan Empire, therefore, the WRC Council and the WRC Office of the Secretariat shall assist the Member States until the constitution of the United States of Morocco is convened into session,

Affirming that the Council shall act in the best interest of human rights and adopt resolutions that promote the Member States to accept or accede to the Council resolutions regarding administrative, legislative draft articles, judicial, economic, social, cultural, and military reforms while the Member States are at varying stages of advancement,

Emphasizing that the combined efforts of States to any dispute can be expressed through a joint Declaration of Intervention as erga omnes parties to help unite our efforts for the common defense of our interdependent States,

Convinced that the Heads of States shall embody the sacred trust of duty, honor, and accountability to protect the United States of Morocco Alliance and its borders, people, and property; and foster friendly relations between Moroccans and Americans, Reaffirming that treaties, international law, peremptory norms (jus cogens), and the principles of uti possidetis juris, inter alia, shall continue to govern questions not expressly regulated by the provisions of the present Multilateral Convention, Solemnly, the respective Wazir Al'rais of their recognized Moorish Governments, have assembled in the State of Meru State Republic Colorado, have exhibited their full powers and found to be in good and due form, and have agreed to the present Multilateral Convention in the Empire of Morocco, and do hereby establish a United States of Morocco Alliance to be known as the Wazir Regional Council (WRC).

# Chapter I: Purposes and Principles of the Convention
## Article 1

For the purpose of the present Convention, the following terms shall have the meanings hereunder assigned to them:

a) "Wazir Al'rais", "Wazir", "WRC", or the "Council" shall have the same meaning,
b) "Member State" means any recognized State or party to the Convention,

c) "Secretariat" means the Administrative Office of the Secretariat and its organs,

d) "Regional Supreme Court" means the compulsory regional Court to settle disputes between parties to the present Convention,

e) "Security Council of Defense" means the combined police and military forces,

f) "Empire" means the Moroccan Empire or Moorish Empire per the Act of Algeciras 1906 Article 31,

g) "Regional" means the combined successor States or the geographical coordinates commonly described as, but not limited to, 38°00'N 97°00'W, inter alia,

h) "Moorish", "Moroccan", "Moor", or "subject" shall have the same meaning, wherefore any subject of Morocco that has been naturalized in a foreign country must choose to pledge their consent of allegiance to a Moroccan State and be recognized as a national by the Government, per the Madrid Convention of 1880 Article 15,

i) "Moorish American" means a connotative linguistic that alludes to stateless Moroccans who have not chosen the entire submission to the laws of a Moroccan State Government in the Empire of Morocco. (See article 76, § 6 for more details)

j) "America" means a foreign, privileged, dependent State in Morocco, and subject to the principles of Moroccan law as binding on the ministerial decrees of Moorish consular courts per the Treaty of Peace and Friendship of 1836, the Madrid Convention of 1880, and the Act of Algeciras of 1906, inter alia,

k) "American" means a naturalized person or member of the foreign and de facto United States intergovernmental organization in Morocco,

l) "United States of Morocco" means a formal treaty alliance between each interdependent Moorish State government to serve, protect, and defend the integrity of domains throughout the Empire of Morocco, as correlative to the Preamble of the Act of Algeciras; article 105, and the provisions of the Charter of the United Nations,

m) "Trust territory" means any territory under the limited jurisdiction of the United States or under the Trustee Council of the present Convention until a Moorish Constitution has been ratified, deposited, and promulgated in accordance with international law and the peremptory norms of uti possidetis juris.

The Purposes of the Wazir Regional Council are:

1. To maintain international peace and security, and to that end: to take effective collective measures for the prevention and removal of threats to the peace, and for the suppression of acts of aggression or other breaches of the peace, and to bring about by peaceful means, and in conformity with the principles of justice and international law, adjustment or settlement of regional disputes, international disputes, or situations which might lead to a breach of the peace throughout the Empire of Morocco,

2. To develop friendly relations among the modern Moroccan States based on respect for the principle of equal rights and self-determination of peoples, and to take other appropriate measures to strengthen regional peace,

3. To achieve international cooperation in solving international problems of an economic, social, cultural, or humanitarian character, and in promoting and encouraging respect for human rights and for fundamental freedoms for all without distinction as to race, gender, sex, language, or religion; and

4. To be a center for harmonizing the actions of the Member States of the United States of Morocco Alliance in the attainment of these common ends.

## Article 2

The Wazir Regional Council and its Member States, in pursuit of the Purposes stated in Article 1, shall act in accordance with the following Principles.

1. The Wazir Regional Council is based on the triple principle of the sovereign equality of all its Member States.

2. All Member States, in order to ensure to all of them the rights and benefits resulting from membership, shall fulfill in good faith the obligations assumed by them in accordance with the present Convention.

3. All Wazir's and their Member States shall settle their regional and international disputes by peaceful means in such a manner that international peace, security, and justice, are not endangered.

4. All Wazir's and their Member States shall refrain in their international relations from the threat or use of force against the territorial integrity or political independence of any Moroccan State, or in any other manner inconsistent with the Purposes of the Convention and in harmony with the principles of the United Nations Charter members.

5. All Member States shall give the Council every assistance in any action it takes in accordance with the present Wazir Regional Council and shall refrain from giving assistance to any Moroccan State against which the Council is taking preventive or enforcement action.

6. The Wazir's Regional Council shall ensure that the Moroccan States which are not Members of the Convention act in accordance with these Principles so far as may be necessary for the maintenance of regional and international peace and security.

7. Nothing contained in the present Convention shall not prevent the authorization of the United Nations General Assembly, the UN Secretariat, its organs, or its staff to intervene in matters which are essentially within the domestic jurisdiction of any Moroccan State; wherefore section (7) of this article 2 shall require the Wazir's and their Member State to submit such matters to settlement under the present Convention, but this principle shall not prejudice the application of enforcement measures under Chapter VI and VII.

8.  The Council may establish an organization that is consistent with the terms of this Convention to refine further its purpose, scope, and objectives and to allocate duties, as appropriate, among the Member States.

# Chapter II: Membership
## Article 3

The original Members of the Convention shall be the Moroccan States which, having participated in the Wazir Regional Conference in the State of Meru State Republic Colorado in Morocco, signed the present multilateral agreement and ratified it in accordance with Article 110.

## Article 4

1.  Membership in the Convention is open to all other Moors and their peace-loving States which accept the obligations contained in the present Convention and, in the judgment of the Wazir Regional Council, that are able and willing to carry out these obligations.
2.  The admission of any such State to membership in the present Convention will be affected by a decision of the Wazir Regional Council upon the recommendation of the Secretariat in cooperation with the Inspector-General.

## Article 5

A Member State of the Convention may be suspended from the exercise of the rights and privileges of membership by the Wazir Regional Council upon the recommendation of the office of the Secretariat or the Inspector-General with the subsequent two-thirds vote of the Council. The exercise of these rights and privileges may be restored by the Council.

## Article 6

A Wazir Al'rais of the Convention who has persistently violated the principles contained in the present Convention may be expelled from the Council by the Council. The exercise of these rights and privileges may be restored by the Council.

# Chapter III: Organs
## Article 7

1.  There are established principal organs of the Convention as follows: a Wazir Regional Council, a Secretariat, a Security Council of Defense, a Treasury, an

Economic, and Social Council, a Trusteeship Council, and a compulsory Regional Supreme Court of Justice.

2. Such subsidiary organs as may be found necessary may be established in accordance with the present Convention.

3. The Council shall elect the Executive Director of the Secretariat and the Inspector-General of the Security Council of Defense for a term of four years with a possibility of one reelection. All other elections and appointments shall be in conformity with the provisions of the present Convention.

## Article 8

The Wazir Regional Council shall place no restrictions on the eligibility of men and women to participate in any capacity and under conditions of equality in its principal and subsidiary organs.

# Chapter IV: The Wazir Regional Council (WRC)
## COMPOSITION Article 9

1. The Wazir Regional Council shall consist of only duly elected and recognized Wazir Al'rais from their State of origin.

## FUNCTIONS AND POWERS Article 10

The Wazir Regional Council may discuss any questions or any matters within the scope of the present Convention or relate to the powers and functions of any organs provided for in the present Convention, and, except as provided in Article 12, may make recommendations to the Member States of the Council or to the Security Council of Defense or to both on any such questions or matters.

## Article 11

1. The Wazir Regional Council may consider the general principles of cooperation in the maintenance of regional, and international peace and security, including the principles governing disarmament and the regulation of armaments, and may make recommendations about such principles to the Member States or to the Security Council of Defense as a natural correlation with the Act of Algeciras Chapters 1 and 2, inter alia.

2. The Wazir Regional Council may discuss any questions relating to the maintenance of regional, or international peace and security brought before it by any Member State of the Council, by the Secretariat, by the Inspector-General, or by a Moroccan State which is not a Member of the Council in accordance with

Article 35, paragraph 2, and, except as provided in Article 12, may make recommendations with regard to any such questions to the State, or dependent states concerned, or to the Security Council of Defense or to both. Any such question on which action is necessary shall be referred to the Council by the Secretariat either before or after discussion.

3. The Wazir Regional Council may call the attention of the Security Council of Defense to situations that are likely to endanger regional or international peace and security.

4. The powers of the Wazir Regional Council set forth in this Article shall not limit the general scope of Article 10.

## Article 12

1. While the Wazir Regional Council is exercising in respect of any dispute or situation the functions assigned to it in the present Convention, the Secretariat or the Security Council of Defense shall accept any recommendation regarding that dispute or situation.

2. The Inspector-General or the Executive Director, with the consent of the Wazir Regional Council, shall notify the Security Council of Defense at each session of any matters relative to the maintenance of regional, or international peace and security which are being dealt with by the Security Council of Defense and shall similarly notify the Inspector-General or the Secretariat, if the Wazir Regional Council is not in session, immediately if the Security Council of Defense ceases to deal with such matters.

## Article 13

1. The Wazir Regional Council shall initiate studies and make recommendations for the purpose of:
   1. promoting regional and international cooperation in the political field and encouraging the progressive development of international law and its codification.
   2. promoting the Charter of the United Nations and its resolutions as a rule of customary international law.
   3. promoting the enforcement of Moorish treaties and Moroccan legislation.
   4. promoting international cooperation in the economic, social, cultural, educational, and health fields, and assisting in the realization of human rights and fundamental freedoms for all without distinction as to race, nationality, gender, sex, language, or religion.

2. The further responsibilities, functions, and powers of the Wazir Regional Council with respect to matters mentioned in paragraph 1 (b) above are set forth in Chapters IX, X, and XI.

## Article 14

Subject to the provisions of Article 12, the Wazir Regional Council may recommend measures for the peaceful adjustment of any situation, regardless of origin, which it deems likely to impair the general welfare or friendly relations among the Moroccan States, or between dependent American states and the Moorish States, including situations resulting from a violation of the provisions of the present Convention setting forth the Purposes and Principles of the present Convention; as correlative with the provisions set forth in Moroccan bilateral and multilateral treaties, conventions, and arrangements throughout the Moorish Empire. The Charter of the United Nations shall act as a guiding principle in the accomplishment of these peaceful settlements.

## Article 15

1. The Wazir Regional Council shall receive and consider annual and special reports from the Security Council of Defense and the Secretariat; these reports shall include an account of the measures that the Security Council of Defense and the Secretariat have decided upon or taken to maintain international peace and security.
2. The Wazir Regional Council shall receive and consider reports from the other organs of the Council and from the Secretary-General of the United Nations.

## Article 16

The Wazir Regional Council shall perform such functions with respect to the regional or international trusteeship system as are assigned to it under Chapters XII and XIII, including the approval of the trusteeship agreements for areas not designated as strategic.

## Article 17

1. The Wazir Regional Council shall consider and approve the budget of the Council and its organs.
2. The expenses of the Council shall be borne by the Member States as apportioned by the Council.
3. The Wazir Regional Council shall consider and approve any financial and budgetary arrangements with specialized agencies referred to in Article 57 and shall examine the administrative budgets of such specialized agencies with a view to making recommendations to the agencies concerned.
4. The Moorish Treasury shall assist will all financial budgetary arrangements.
5. The Moorish Treasury shall be an organ of the Secretariat.

## VOTING Article 18

1. Each Wazir of the Council shall have one vote.

2. Decisions of the Wazir Regional Council on important questions shall be made by a two-thirds majority of Wazir's present to vote or by hybrid visual voting. These questions shall include: recommendations with respect to the maintenance of regional, and international peace and security, the election of the members of the Secretariat, the Security Council of Defense, the Economic and Social Council, and the Trusteeship Council in accordance with paragraph 1 (c) of Article 86, the admission of new Member States to the Convention, the suspension of the rights and privileges of membership, the expulsion of Member States, questions relating to the operation of the trusteeship system, and budgetary questions.

3. Decisions on other questions, including the determination of additional categories of questions to be decided by a two-thirds majority, shall be made by a majority of Wazir's present to vote or by hybrid visual voting.

4. Each Member State can choose 1 of 4 categories: 1) Yes vote. 2) No vote. 3) Abstain. or 4) Absent.

5. A category of "Abstain" shall not mean a "No vote"; veto power is obsolete.

## Article 19

A Member State of the Convention which is in arrears in the payment of its financial contributions to the Regional Treasury Department shall have no vote in the Wazir Regional Council if the amount of its arrears equals or exceeds the amount of the contributions due from the delinquent Member State. The Wazir Regional Council may, nevertheless, permit such a Member State to vote if it is satisfied that the failure to pay is due to conditions beyond the control of the Member State, inter alia.

## PROCEDURE Article 20

The Wazir Regional Council shall meet in regular annual sessions and in such special sessions as the occasion may require. The Executive Director or the Inspector-General shall be entitled to invoke special sessions regarding alleged acts of terrorism, torture, genocide, and aggression by a foreign State or an organization.

## Article 21

The Wazir Regional Council shall adopt its own rules of procedure. It shall elect its Chairman for three years and the Chairman shall appoint three nonpermanent cochairs. A Chairman shall not serve more than 2 reelections.

Any Wazir Al'rais holding position of Chairman within the WRC that is not reelected by their State of origin shall be replaced by the Vice Chairman at the appropriate date set forth by the Council. The Vice Chairman shall take the oath of office and become the "Chairman tempore" for no more than 90 days. The Wazir Regional Council shall vote on a new Chairman within 90 days and the newly elected Chairman may begin a new three-year term. The newly elected Chairman is entitled to appoint three co-chairs. The

Council shall not vote on a new Chairman until all vacated seats of the Council are filled and in session to cast a vote; this rule is without prejudice.

## Article 22

The Wazir Regional Council may establish such subsidiary organs as it deems necessary for the performance of its functions.

# Chapter V: The United States of Morocco Treaty Organization
## COMPOSITION Article 23

1. The "United States of Morocco Treaty Organization" articles shall be drafted by the Wazir Regional Council and come into force by protocol accessions to serve as a military alliance for Homeland Security throughout the Moorish Empire. 2. The Wazir Regional Council shall appoint an Inspector-General and establish a Security Council of Defense in harmony with the provisions of the United States of Morocco Treaty Organization. The Inspector-General shall appoint a Moorish Minister of Defense to command the police and Military committee for the maintenance of regional, and international peace and security and for equitable geographical distribution throughout the Moorish ports and trade routes; the international law of the Sea shall not prejudice the treaty rights of Moors and Moorish ports in pursuance with the Act of Algeciras, article 123, inter alia.

3. Each Member State shall appoint to the Security Council of Defense one Consul General and that representative shall have no more than 5,000 police or military personnel under their command from their State of origin.

4. The Sargent(s) at arms shall be under the command of the Moorish Minister of Defense without delay or interruption. The Moorish Minister of Defense shall be under the command of the Inspector-General. The Inspector-General shall be under the command of the Wazir Regional Council.

## FUNCTIONS AND POWERS Article 24

1. In order to ensure prompt and effective action by the Wazir Regional Council, its Member States confer on the Security Council of Defense and the Inspector General the primary responsibility for the maintenance of international peace and security and agree that in carrying out its duties under this responsibility the Moorish Minister of War, the Sargent(s) at arms and their police and military acts on their behalf.

2. In discharging these duties, the Security Council of Defense shall act in accordance with the Purposes and Principles of the Wazir Regional Council, and as a natural corollary to the United Nations Charter. The specific powers granted to the Security Council of Defense for the discharge of these duties are laid down in Chapters VI, VII, VIII, and XII.

3. The Inspector-General shall submit annual and, when necessary, special reports to the Wazir Regional Council for its consideration.

## Article 25

The organs and representatives of the Secretariat which includes the organs of the Security
Council of Defense agree to accept and carry out the decisions of the Wazir Regional Council, and the Member States in accordance with the present Convention, and in harmony with the articles of the United States of Morocco Treaty Organization. The United States of Morocco Treaty Organization shall also be under the command of the Wazir Regional Council and its Military Staff Committee, inter alia.

## Article 26

In order to promote the establishment and maintenance of international peace and security with the least diversion for armaments of the world's human and economic resources, the Security Council of Defense and the Inspector-General shall be responsible for formulating, with the assistance of the Military Staff Committee referred to in Article 24 and 47, plans to be submitted to the Member States for the establishment of a system for the regulation of armaments. The United States of Morocco Treaty Organization shall act in harmony with this article. Recalling that the Act of Algeciras Chapters 1 and 2 set forth reforms for the "Moorish Government to

organize the police" and "regulate the detection and repression of contraband arms" throughout the Moroccan Empire.

## VOTING  Article 27

1. Before the Security Council of Defense can activate any military or police engagement against a domestic Moroccan State, foreign state, or foreign international organization. The Wazir Regional Council shall call upon each Member State to cast one vote before any act of self-defense is agreed upon.
2. Decisions of the Security Council of Defense on procedural matters shall be confirmed by an affirmative vote of the Wazir Regional Council.
3. Decisions of the Security Council of Defense on all other matters shall be made by an affirmative majority vote of Member States in present or by hybrid visual voting, provided that, in decisions under Chapter VI, and under paragraph 3 of Article 52, a party to a dispute shall abstain from voting.

## PROCEDURE Article 28

1. The Security Council of Defense and the seat of the Moorish Minister of Defense shall be so organized as to be able to function continuously. Each seat for the Consul General at the Security Council of Defense shall always be represented.
2. The Security Council of Defense shall hold periodic meetings at which each of its members may, if it so desires, be represented by a "Consul General tempore" of the government or by some other specially designated representative.
3. The Security Council of Defense may hold hybrid visual meetings at such places other than the seat of the main building address as in its judgment will best facilitate its work.

## Article 29

The Security Council of Defense may establish such subsidiary organs as it deems necessary for the performance of its functions.

## Article 30

The Security Council of Defense shall adopt its own rules of procedure, including the method of selecting its Moorish Minister of Defense.

## Article 31

Any Member State of the Wazir Regional Council that does not have a Consul General at the Security Council of Defense may participate, without a vote, in the discussion of any question brought before the Security Council of Defense or the Wazir Regional Council whenever the latter considers that the interests of that Member State are especially affected.

## Article 32

If a non-member State does not have a Consul General seat at the Security Council of Defense, and subsequently becomes a party to a dispute under consideration by the Security Council of Defense; the non-member State shall be invited to participate, without a vote, in the discussion relating to the dispute. The Security Council of Defense shall lay down such conditions as it deems just for the participation of a State which is not a Member State of the Convention. A non-member State is not entitled to diplomatic relations or representation by the present Convention, or any of the organs of the Convention. Nonmember States have a right to settle their dispute in accordance with the ordinary methods of treaties and international law.

Any Moorish State Government not a party to the Convention shall adhere to the principles of the United Nations Charter without prejudice; anything contrary is notwithstanding.

# Chapter VI: Regional Settlement of Dispute in Morocco
## Article 33

1. The parties to any dispute, the continuance of which is likely to endanger the maintenance of regional, and international peace and security, shall, first, seek a solution by negotiation, inquiry, mediation, conciliation, arbitration, judicial settlement, resort to regional agencies or arrangements, or other peaceful means of their own choice.
2. The Wazir Regional Council in cooperation with the organs of the Secretariat and the Inspector-General shall, when it deems necessary, call upon the parties to settle their dispute by such means.

## Article 34

The Inspector-General or the organs of the Secretariat may investigate any dispute or any situation which might lead to regional or international friction or give rise to a dispute, in order to determine whether the continuance of the dispute or situation is likely to endanger the maintenance of international peace and security.   A report shall be communicated to the Wazir Regional Council.

## Article 35

1. Any Member State of the United Nations Charter may bring any dispute, or any situation of the nature referred to in Article 34, to the attention of the Inspector General, the Secretariat, or the Wazir Regional Council.
2. A Moroccan State which is not a Member State of the Convention may bring to the attention of the Council, the Secretariat, or the Inspector-General any dispute to which it is a party, if it accepts in advance, for the purposes of the dispute, the obligations of regional settlement of disputes provided in the Convention.


3. The proceedings of the Wazir Regional Council and the Security Council of Defense in respect of matters brought to its attention under this Article will be subject to the provisions of Articles 11 and 12.

## Article 36

1. The Inspector-General and the Security Council of Defense may, at any stage of a dispute of the nature referred to in Article 33 or of a situation of like nature, recommend appropriate procedures or methods of adjustment.
2. The Wazir Regional Council and the Security Council of Defense should take into consideration any procedures for the settlement of the dispute which have already been adopted by the parties.
3. In making recommendations under this Article the Wazir Regional Council, the Secretariat, and the Security Council of Defense should also take into

consideration that legal disputes between the Moorish States, should as a general rule, be referred by the parties to the ipso facto compulsory jurisdiction of the Moorish Supreme Court, in lieu of petitioning the UN International Court of Justice; in accordance with the provisions of the Statute of each Court.

## Article 37

1. Should the parties to a dispute of the nature referred to in Article 33 fail to settle it by the means indicated in that Article, they shall refer it to the Security Council of Defense.
2. If the Security Council of Defense deems that the continuance of the dispute is in fact likely to endanger the maintenance of international peace and security, it shall decide whether to take action under Article 36 or to recommend such terms of settlement as it may consider appropriate.

## Article 38

Without prejudice to the provisions of Articles 33 to 37, the Wazir Regional Council or the Security Council of Defense may, if all the parties to any dispute so request, make recommendations to the parties with a view to a regional settlement of a dispute or a pacific settlement of the dispute.

# Chapter VII: Action with Respect to Threats to the Peace, Breaches of the Peace, and Acts of Aggression
## Article 39

The Wazir Regional Council in cooperation with the Security Council of Defense, in harmony with the United States of Morocco Treaty Organization, shall determine the existence of any threat to the peace, breach of the peace, or act of aggression and shall make recommendations, or decide what measures shall be taken in accordance with Articles 41 and 42, to maintain or restore regional or international peace and security.

## Article 40

In order to prevent an aggravation of the situation, the Wazir Regional Council in cooperation with the Security Council of Defense, in harmony with the United States of Morocco Treaty Organization, may, before making the recommendations or deciding upon the measures provided for in Article 39, call upon the parties concerned to comply with such provisional measures as it deems necessary or desirable. Such provisional measures shall be without prejudice to the rights, claims, or position of the parties

concerned. The Wazir Regional Council in cooperation with the Security Council of Defense shall duly take account of failure to comply with such provisional measures.

## Article 41

The Wazir Regional Council may decide what measures not involving the use of armed force are to be employed to give effect to its decisions, and it may call upon the Members of the Security Council of Defense in cooperation with the United States of Morocco Treaty Organization to apply such measures. These may include complete or partial interruption of economic relations and of land, air, sea, postal, cyber, and other means of communication, and the severance of diplomatic relations.

## Article 42

Should the Wazir Regional Council consider that measures provided for in Article 41 would be inadequate or have proved to be inadequate, it may take such action by air, sea, or land forces as may be necessary to maintain or restore regional or international peace and security. Such action may include demonstrations, blockades, and other operations by air, sea, or land forces of the Security Council of Defense in cooperation with the United States of Morocco Treaty Organization.

## Article 43

1. The Security Council of Defense in cooperation with the United States of Morocco Treaty Organization shall act in harmony, on a case-by-case basis with Members of the United Nations Charter, in order to contribute to the maintenance of regional, and international peace and security, undertake to make available to the UN Security Council, on its call and in accordance with a special agreement or agreements, armed forces, assistance, and facilities, including rights of passage, necessary for the purpose of maintaining regional, and international peace and security.
2. Such agreement or agreements shall govern the numbers and types of forces, their degree of readiness and the general location, and the nature of the facilities and assistance to be provided.
3. The agreement or agreements shall be negotiated as soon as possible on the initiative of the Wazir Regional Council in diplomatic relations with the UN General Assembly members. They shall be concluded between the Wazir Regional Council, its Member States, and the UN General Assembly, and its Members, or between the Wazir Regional Council representative and the UN General Assembly Members and shall be subject to ratification by the signatory States in accordance with their respective constitutional processes.

## Article 44

When the Wazir Regional Council in cooperation with the Security Council of Defense has decided to use force it shall, before calling upon a Member State not represented on it to provide armed forces in fulfillment of the obligations assumed under Article 43, invite that Member State, if the Member State so desires, to participate in the decisions of the Security Council of Defense concerning the employment of contingents of that Member's armed forces.

## Article 45

In order to call upon the "United States of Morocco Treaty Organization" and its armed forces or the Charter of the United Nations Security Council to take urgent military measures. The Moroccan Member States shall hold immediately available national air force contingents for combined regional or international enforcement action. The strength and degree of readiness of these contingents and plans for their combined action shall be determined within the limits laid down in the special agreement or agreements referred to in Article 43, by the Wazir Regional Council, the Security Council of Defense, and the United Nations Security Council with the assistance of the combined Military Staff Committee.

## Article 46

Plans for the application of armed force shall be made by the Wazir Regional Council in cooperation with the Security Council of Defense, and on a case-by-case basis with the United Nations Security Council, with the assistance of a combined Military Staff Committee.

## Article 47

1. There shall be an established Military Staff Committee to advise and assist the Inspector-General, the Moorish Minister of Defense, and the Security Council of Defense on all questions relating to the Moorish Minister of Defense's military requirements for the maintenance of regional, and international peace and security, the employment and command of forces placed at its disposal, the regulation of armaments, and possible disarmament.
2. The Military Staff Committee shall consist of the Chiefs of Staff for the Security Council of Defense. Any Member State of the United States of Morocco Treaty Organization shall be invited by the Committee to be associated with it when the efficient discharge of the Committee's responsibilities requires the participation of that Member in its work.
3. The Military Staff Committee shall be responsible under the Moorish Minister of Defense for the strategic direction of any armed forces placed at the disposal of

the Security Council of Defense. Questions relating to the command of such forces shall be worked out subsequently with the Inspector-General; inter alia. 4. The Military Staff Committee, with the authorization of the Moorish Minister of

Defense and after consultation with appropriate regional agencies, may establish regional sub-committees.

## Article 48

1. The action required to carry out the decisions of the Security Council of Defense for the maintenance of regional, and international peace and security shall be taken by all the Member States in cooperation with the United States of Morocco Treaty Organization or by some of them, as they may freely determine.
2. Such decisions shall be carried out by the Member States of the Convention as a natural corollary with the United States of Morocco Treaty Organization directly and through their action in the appropriate regional, and international agencies of which they are members.

## Article 49

The Member States of the Wazir Regional Council in conformity with the United States of Morocco Treaty Organization shall join in affording mutual assistance in carrying out the measures decided upon by the Wazir Regional Council and the Security Council of Defense.

## Article 50

If preventive or enforcement measures against any State are taken by the Wazir Regional Council, whether a Member State of the United States of Morocco Treaty Organization or not, which finds itself confronted with special economic problems arising from the carrying out of those measures, shall have the right to consult the Security Council of Defense regarding a solution of those problems.

## Article 51

Nothing in the present Convention shall impair the inherent right of individual or collective immediate self-defense if an armed attack occurs against a Member State of the Convention or the United States of Morocco Treaty Organization. Measures taken by any Member State in the exercise of this right of immediate self-defense shall be immediately reported to the Wazir Regional Council and the Security Council of Defense and shall not in any way affect the authority and responsibility of the Wazir Regional Council or the Security Council of Defense, in harmony with the United States of Morocco Treaty

Organization, under the present Convention to take at any time such action as it deems necessary in order to maintain or restore regional, and international peace and security. The United Nations Charter provisions on "self-defense" shall be observed in the exercise of countermeasures.

# Chapter VIII: Regional Arrangements
## Article 52

1. Nothing in the present Convention, the United States of Morocco Treaty Organization, or the Charter of the United Nations precludes the existence of regional arrangements or agencies for dealing with such matters relating to the maintenance of regional or international peace and security as appropriate for regional action provided that such arrangements or agencies and their activities are consistent with the Purposes and Principles of the United Nations.

2. The Member States of the Convention and the United States of Morocco Treaty Organization entering such arrangements or constituting such agencies shall make every effort to achieve pacific settlement of local disputes through such regional arrangements or by such regional agencies before referring them to the United Nations General Assembly, the Security Council and its committees.

3. The Member States of the Convention and of the United States of Morocco Treaty Organization shall encourage the development of the pacific settlement of local disputes through such regional arrangements or by such regional agencies either on the initiative of the States concerned or by reference from the United Nations General Assembly, the Security Council, and its committees.

4. This Article in no way impairs the application of Articles 34 and 35, inter alia.

## Article 53

1. The Wazir Regional Council in cooperation with the Security Council of Defense, and in harmony with the United States of Morocco Treaty Organization shall, where appropriate, utilize such regional arrangements or agencies to enforce action under its authority. But no enforcement action shall be taken under regional arrangements or by regional agencies without the authorization of the Wazir Regional Council, with the exception of measures against any enemy State, as defined in paragraph 2 of this Article, provided for pursuant to Article 107 or in regional arrangements directed against the renewal of aggressive policy on the part of any such State, until such time as the Wazir Regional Council may, on request of the Governments concerned, be charged with the responsibility for preventing further aggression by such a State or foreign international organization.

2. The term "enemy State" as used in paragraph 1 of this Article applies to any State or intergovernmental organization of a State that causes injury by Internationally Wrongful Acts against any Moorish State in Morocco.

## Article 54

The Wazir Regional Council shall always be kept fully informed of activities undertaken or in contemplation under regional arrangements or by regional agencies for the maintenance of regional, and international peace and security.

# Chapter IX: International Economic and Social Cooperation

## Article 55

With a view to the creation of conditions of stability and well-being which are necessary for peaceful and friendly relations among States based on respect for the principle of equal rights and self-determination of peoples, the Wazir Regional Council shall promote:

1. higher standards of living, full employment, and conditions of economic and social progress and development,
2. solutions to international economic, social, health, and related problems, international cultural and educational cooperation; and
3. universal respect for, and observance of, human rights and fundamental freedoms for all without distinction as to race, nationality, gender, sex, language, or religion.

## Article 56

All Member States pledge themselves to take joint and separate action in cooperation with the Wazir Regional Council for the achievement of the purposes set forth in Article 55.

## Article 57

1. The various specialized agencies, established by intergovernmental agreement and having wide international responsibilities, as defined in their basic instruments, in economic, social, cultural, educational, health, and related fields, shall be brought into relationship with the Wazir Regional Council in accordance with the provisions of Article 63.
2. Such agencies thus brought into a written relationship with the Wazir Regional Council are hereinafter referred to as specialized agencies.

## Article 58

The Wazir Regional Council shall make recommendations for the coordination of the policies and activities of the specialized agencies.

## Article 59

The Wazir Regional Council shall, where appropriate, initiate negotiations among the Member States concerned for the creation of any new specialized agencies required for the accomplishment of the purposes set forth in Article 55.

## Article 60

Responsibility for the discharge of the functions of the Convention set forth in this Chapter shall be vested in the organs of the Secretariat and in the Economic and Social Council, under the authority of the Wazir Regional Council, which shall have for this purpose the powers set forth in Chapter X.

Affirming that the Preamble of the Act of Algeciras firmly secures the triple principle of economic liberty without any inequality.  Reaffirming that the Act of Algeciras Article 105 and 106 firmly secures the Moorish Governments treaty right to govern the public services, public works, and public utilities as a means to control the economics and social reforms.

# Chapter X: The Economic and Social Council
## COMPOSITION Article 61

1. The Economic and Social Council shall consist of fifty-four Members of the Convention elected by the Wazir Regional Council.
2. Subject to the provisions of paragraph 3, eighteen members of the Economic and Social Council shall be elected each year for a term of three years. A retiring member shall be eligible for immediate re-election.
3. At the first election after the increase in the membership of the Economic and Social Council from twenty-seven to fifty-four members, in addition to the members elected in place of the nine members whose term of office expires at the end of that year, twenty-seven additional members shall be elected. Of these twenty-seven additional members, the term of office of nine members so elected shall expire at the end of one year, and of nine other members at the end of two years, in accordance with arrangements made by the Wazir Regional Council.
4. Each member of the Economic and Social Council shall have one representative.

## FUNCTIONS AND POWERS Article 62

1. The Economic and Social Council may make or initiate studies and reports with respect to international economic, social, cultural, educational, health, and related matters and may make recommendations with respect to any such matters to the Wazir Regional Council to the Member States of the Convention, and to the specialized agencies concerned.
2. It may make recommendations for the purpose of promoting respect for, and observance of, human rights and fundamental freedoms for all.
3. It may prepare draft conventions for submission to the Wazir Regional Council, with respect to matters falling within its competence.
4. It may call, in accordance with the rules prescribed by the Wazir Regional Council, international conferences on matters falling within its competence.

## Article 63

1. The Economic and Social Council may enter into agreements with any of the agencies referred to in Article 57, defining the terms on which the agency

   concerned shall be brought into a relationship with the Inspector-General or the Secretariat. Such agreements shall be subject to approval by the Wazir Regional Council.
2. It may coordinate the activities of the specialized agencies through consultation with and recommendations to such agencies and through recommendations to the Inspector-General, the Secretariat, and to the Wazir Regional Council.

## Article 64

1. The Economic and Social Council may take appropriate steps to obtain regular reports from specialized agencies. It may plan arrangements with the Member States of the multilateral convention and with the specialized agencies to obtain reports on the steps taken to give effect to its own recommendations and to recommendations on matters falling within its competence made by the Inspector General and the Secretariat. It may communicate its observations on these reports to the Wazir Regional Council.

## Article 65

The Economic and Social Council may furnish information to the Security Council of Defense and shall assist the Security Council of Defense upon its request.

## Article 66

1. The Economic and Social Council shall perform such functions as fall within its competence in connection with the carrying out of the recommendations of the Inspector-General and the Secretariat.
2. It may, with the approval of the Wazir Regional Council, perform services at the request of the Member States of the Convention and at the request of specialized agencies.
3. It shall perform such other functions as are specified elsewhere in the present Convention or as may be assigned to it by the Wazir Regional Council.

## VOTING Article 67

1. Each member of the Economic and Social Council shall have one vote.
2. Decisions of the Economic and Social Council shall be made by a majority of the members present or hybrid visual voting.

## PROCEDURE Article 68

The Economic and Social Council shall set up commissions in economic and social fields and for the promotion of human rights, and such other commissions as may be required for the performance of its functions.

## Article 69

The Economic and Social Council shall invite any Member of the Convention to participate, without a vote, in its deliberations on any matter of particular concern to that Member.

## Article 70

The Economic and Social Council may plan arrangements for representatives of the specialized agencies to participate, without a vote, in its deliberations and in those of the commissions established by it, and for its representatives to participate in the deliberations of the specialized agencies.

## Article 71

The Economic and Social Council may make suitable arrangements for consultation with non-governmental organizations which are concerned with matters within its competence. Such arrangements may be made with international organizations and,

where appropriate, with national organizations after consultation with the Member of the Convention concerned.

### Article 72

1. The Economic and Social Council shall adopt its own rules of procedure, including the method of selecting its Director.
2. The Economic and Social Council shall meet as required in accordance with its rules, which shall include provision for the convening of meetings at the request of a majority of its members.

# Chapter XI: Declaration Regarding Foreign Dependent Chartered states and Indian Reservations in Morocco
### Article 73

Member States of the Convention which have or assume responsibilities for the public services, public works, and public utilities over the administration of foreign American states and Indian reservations, in Morocco, must enact friendly applications and arrangements for dependent chartered states and peoples that have not yet attained comprehension of Moroccan law. Members States in cooperation with the dependent chartered states shall enact legislative measures as a natural corollary to the United Nations Declaration on the Rights of Indigenous Peoples of 2007, inter alia.
Member States shall recognize the treaty rights of the Americans to hold property in Morocco pursuant to the Madrid Convention of 1880 Article 11; and in harmony with the Act of Algeciras of 1906 Article 60, inter alia.

The provisions of the bilateral Treaty of Peace and Friendship of 1786 & 1836, the multilateral Madrid Convention of 1880, and the multilateral International Convention of the Act of Algeciras of 1906, inter alia, are still in full force and effect between the

parties. Member States accept as a sacred trust the obligation to promote to the utmost, within the system of international peace and security established by the present Convention, the wellbeing of the de jure United States of America and its naturalized persons or members of the de facto United states international organization, and, to this end:

1. to ensure, with due respect for the culture of the American and Indian peoples concerned, their political, economic, social, and educational advancement, their just treatment, and their protection against human rights violations in Morocco; however, it is important to note that Indians shall be subject to the ministerial decrees of Moroccan law under the customs of erga omes principles in Morocco.

---

73 | Unlawful Arrest of a Diplomat in Violation of Diplomatic Relations and Consular Relations in the case concerning Amaris Maaz Bey, ex. rel. CEDRIC GERARD PARKER: _____ - _____ - _____ CG-AR-700.001

2. to take due account of their foreign political institutions, privatized municipalities, and associations according to the circumstances of each dependent chartered state, its naturalized persons, and Indian reservations in Morocco.

3. to further international peace and security by observing Moroccan law and the customary norms of international law.

4. to promote constructive measures of development between Moorish governments and foreign dependent states and their Indian reservations, to encourage research, and to cooperate with one another and, when and where appropriate, with specialized regional and international bodies with a view to the practical achievement of the social, economic, and scientific purposes set forth in this Article; and

5. to transmit regularly to the Moroccan Inspector-General and the United Nations Secretary-General for information purposes, subject to such limitation as security and constitutional considerations may require, statistical and other information of a technical nature relating to economic, social, and educational conditions in the territories for which they are respectively responsible other than those territories to which Chapters XII and XIII apply.

## Article 74

Member States of the Convention also agree that their policy in respect of the territories to which this Chapter applies, no less than in respect of their metropolitan areas, must be based on the general principle of good-neighborliness, due account being taken of the interests and well-being of the region, and the rest of the world, in social, economic, and commercial matters.

# Chapter XII: Regional Trusteeship System
## Article 75

The Wazir Regional Council shall establish under its authority a regional trusteeship system for the administration and supervision of such territories as may be placed thereunder by subsequent individual agreements. These territories are hereinafter referred to as trust territories.

## Article 76

The basic objectives of the trusteeship system, in accordance with the Purposes of the present Convention and as a natural corollary with the Charter of the United Nations laid down in Article 1 of the Convention and UN Charter, shall be:

1. to further regional and international peace and security,
2. to promote the political, economic, social, and educational advancement of the ipso jure Moorish subjects, protégés, native Moors or inhabitants of the trust

territories, and their progressive development towards self-government or independence as may be appropriate to the particular circumstances of each territory and its peoples and the freely expressed wishes of the Moors concerned, and as may be provided by the terms of each trusteeship agreement,

3. to encourage respect for human rights and for fundamental freedoms for all without distinction as to race, nationality, gender, sex, language, or religion, and to encourage recognition of the interdependence of the native Moors of the world; and

4. to ensure equal treatment in social, economic, and commercial matters for all Member States of the Convention and the Members of the United Nations and their nationals, and equal treatment for the latter in the administration of justice, without prejudice to the attainment of the foregoing objectives and subject to the provisions of Article 80.

5. Any naturalized person in the United States that is classified as being a "negro", "black person", "colored", or "African American" is in fact an ipso jure Moorish subject or protégé pursuant with the Madrid Convention of 1880, inter alia.

6. "Moorish Americans" are descendants of Moroccans who were naturalized in American jurisdiction under the Naturalization Act of 1870 and the 14th Amendment of the United States Constitution. Also, the "Moorish American" has not chosen between the entire submission to the laws of the Empire as set forth in the Treaty of Madrid 1880, article 15, paragraph 1.

## Article 77

1. The trusteeship system shall apply to such territories in the following categories as may be placed thereunder by means of trusteeship agreements:
    1. territories now held under colonial power, consent, or acquiescence,
    2. territories that may be detached from the United States as a result of decolonization throughout the Moorish Empire; and
    3. territories voluntarily placed under the system by the Secretariat of the Convention, or the "United States of Morocco Treaty Organization" will be responsible for their administration and defense by mutual agreement.

2. It will be a matter for subsequent agreement as to which territories in the foregoing categories will be brought under the trusteeship system and upon what terms.

3. Articles 75 through 85 shall be enforced by the Treaty of Peace and Friendship of 1836 Article 22, the Madrid Convention of 1880 Article 11, and the Act of Algeciras of 1906 Article 60, inter alia.

## Article 78

The trusteeship system shall not apply to territories that have Declared their Independence, deposited a ratified Constitution in accordance with international law,

and become Members or non-Members of the Charter of the United Nations, the relationship among which shall be based on respect for the principle of sovereign equality.

## Article 79

The terms of trusteeship for each territory to be placed under the trusteeship system, including any alteration or amendment, shall be agreed upon by the States directly concerned, including the mandatory power in the case of territories held under mandate by a Member of the Charter of the United Nations, or by the Members of the Convention in harmony with the United States of Morocco Treaty Organization; and shall be approved as provided for in Articles 83 and 85.

## Article 80

1. Except as may be agreed upon in individual trusteeship agreements, made under Articles 77, 79, and 81, placing each territory under the trusteeship system, and until such agreements have been concluded, nothing in this Convention, the United States of Morocco Treaty Organization, or the Charter of the United Nations shall be construed in or of itself to alter in any manner the rights whatsoever of any States, any peoples, or the terms of existing international instruments to which Member States of the present Convention or Members of the United Nations Charter may respectively be parties.
2. Paragraph 1 of this Article shall not be interpreted as giving grounds for delay or postponement of the negotiation and conclusion of agreements for placing mandated and other territories under the trusteeship system as provided for in Article 77; and
3. Any islands that the United States of America or the United States claims as territories shall be subject to the Treaty of Peace and Friendship 1836, article 22.

## Article 81

The trusteeship agreement shall in each case include the terms under which the trust territory will be administered and designate the authority which will exercise the administration of the trust territory. Such authority hereinafter called the administering authority, maybe one or more States, or under the authority of the Convention in harmony with the United States of Morocco Treaty Organization, or the UN Charter itself.

## Article 82

There may be designated, in any trusteeship agreement, a strategic area or areas that may include part or all of the trust territory to which the agreement applies, without prejudice to any special agreement or agreements made under Article 43.

## Article 83

1. All functions of the present Convention, the United States of Morocco Treaty Organization, and the United Nations Charter relating to strategic areas, including the approval of the terms of the trusteeship agreements and of their alteration or amendment shall be exercised by the Moroccan Security Council of Defense in cooperation with the Security Council of the UN Charter.
2. The basic objectives set forth in Article 76 shall be applicable to the people of each strategic area.
3. The Security Council of Defense in cooperation with the Security Council of the UN Charter shall, subject to the provisions of the trusteeship agreements and without prejudice to security considerations, avail itself of the assistance of the Trusteeship Council to perform those functions of the present Convention in cooperation with the United Nations Charter under the trusteeship system relating to political, economic, social, and educational matters in the strategic areas.

## Article 84

It shall be the duty of the administering authority to ensure that the trust territory shall play its part in the maintenance of international peace and security. To this end, the administering authority may make use of volunteer forces, facilities, and assistance from the trust territory in carrying out the obligations towards the Security Council of Defense in harmony with the United States of Morocco Treaty Organization, in cooperation with UN Security Council undertaken in this regard by the administering authority, as well as for local defense, and the maintenance of law and order within the trust territory.

## Article 85

1. The functions of the Convention and the United Nations Charter regarding trusteeship agreements for all areas not designated as strategic, including the approval of the terms of the trusteeship agreements and of their alteration or amendment, shall be exercised by the Wazir Regional Council in cooperation with the United Nations General Assembly.
2. The Trusteeship Council, operating under the authority of the Wazir Regional Council in cooperation with the General Assembly shall assist the Wazir Regional Council and the General Assembly in carrying out these functions.

# Chapter XIII: The Regional Trusteeship Council in Session

## COMPOSITION Article 86

1. The Trusteeship Council of the United Nations Charter has "adjourned sine die" and therefore the Wazir Regional Council shall establish a Trustee Council to consist as an organ of the Secretariat for:
    1. those Trusteeship Council administering trust territories,
    2. such of those Members mentioned by name in Article 23 as are not administering trust territories; and
    3. as many other Trusteeship Council members elected for three-year terms by the Wazir Regional Council as may be necessary to ensure that the total number of members of the Trusteeship Council is equally divided between those members of the Trusteeship Council which administer trust territories.
2. Each member of the Trusteeship Council shall designate one specially qualified person to represent it therein.

## FUNCTIONS AND POWERS Article 87

The Secretariat, and, under its authority, the organs of the Trusteeship Council, in carrying out their functions, may:

1. consider reports submitted by the administering authority,
2. accept petitions and examine them in consultation with the administering authority,
3. provide for periodic visits to the respective trust territories at times agreed upon with the administering authority; and
4. take these and other actions in conformity with the terms of the trusteeship agreements.
5. take note that the United Nations Trusteeship Council is non-functional and absent of a Committee, however, the UN Trusteeship Council has not dissolved the organ.

## Article 88

The Trusteeship Council shall formulate a questionnaire on the political, economic, social, and educational advancement of the inhabitants of each trust territory, and the administering authority for each trust territory within the competence of the Secretariat shall make an annual report to the Wazir Regional Council upon the basis of such questionnaire.

## VOTING Article 89

1. Each member of the Trusteeship Council shall have one vote.
2. Decisions of the Trusteeship Council shall be made by a majority of the members present and hybrid visual voting.

**PROCEDURE Article 90**

1. The Trusteeship Council shall adopt its own rules of procedure, including the method of selecting its Director.
2. The Trusteeship Council shall meet as required in accordance with its rules, which shall include provision for the convening of meetings at the request of a majority of its members.

## Article 91

The Trusteeship Council shall when appropriate, avail itself of the assistance of the Economic and Social Council and of the specialized agencies regarding matters with which they are respectively concerned.

# Chapter XIV: The Compulsory Regional Supreme Court
## Article 92

The ipso facto compulsory Regional Supreme Court shall be the recognized principal judicial organ of the Convention between the Moroccan Member States. It shall function in accordance with the annexed Moroccan laws, which are based upon the laws of the regional Court and forms an integral part of the present Convention to settle disputes between Moorish States. The Regional Supreme Court shall have the juridical powers to issue Judgments, Advisory Opinions, and Orders, without prejudice, and in accordance with the ordinary methods of international law.
The Wazir Regional Council shall elect up to nine Moorish Judges to serve as permanent Justices of the peace until the date of the Convention is dissolved by the Member States. There shall be no less than five Judges presiding over a case at any time. The Judges shall be entitled to privileges and immunities in accordance with the norms of international law.

Taking further note, the Regional Supreme Court Justices shall recognize the ipso facto compulsory International Court of Justice as the principal organ of the World Court in accordance with the Charter of the United Nation regarding the Pacific Settlement of Disputes.

## Article 93

1. All Member States shall accept the Statutes of the Regional Supreme Court by legislative measures and deposit the accession document with the Secretariat. The Secretariat shall notify the Member States by promulgation.
2. A Moroccan State which is not a Member of the Convention may become a party to the Statutes of the Regional Supreme Court on conditions to be determined in

each case by the Wazir Regional Council upon the recommendation of the Inspector-General or the Secretariat.

## Article 94

1. Each Member State undertakes to comply with the decision of the Regional Supreme Court in any case to which it is a party.
2. If any Member State or a non-member State to a case fails to perform the obligations incumbent upon it under a judgment rendered by the Regional Supreme Court, the other party may have recourse to the Wazir Regional Council and the Security Council of Defense, which may, if it deems necessary, make recommendations or decide upon measures to be taken to give effect to the judgment.

## Article 95

Nothing in the present Convention or the Charter of the United Nations shall prevent Members of the Convention or Members of the United Nations Charter from entrusting the solution of their differences to other tribunals by virtue of agreements already in existence or which may be concluded in the future.

## Article 96

1. Any Member State of the Convention may request the Regional Supreme Court and the International Court of Justice to give an advisory opinion on any legal question.
2. The UN General Assembly or the UN Security Council may request the International Court of Justice to give an advisory opinion on any legal question.
3. Other organs of the United Nations and specialized agencies, which may at any time be so authorized by the UN General Assembly, may also request advisory opinions of the International Court of Justice on legal questions arising within the scope of their activities.

# Chapter XV: The Secretariat
## Article 97

The Secretariat shall comprise an Executive Director and an Inspector-General and such staff as the Secretariat may require. The Executive Director shall be appointed by vote, by the Wazir Regional Council. The Executive Director shall be the Chief Administrative officer over the Secretariat and the office of the Inspector-General.

The Wazir Regional Council is entitled to choose from different nationalities to serve as Representatives of the Secretariat and its organs.

## Article 98

The Executive Director and the Inspector-General shall act in that capacity in all meetings of the Wazir Regional Council, the Security Council of Defense, the Economic and Social Council, and the Trusteeship Council, and shall perform such other functions as are entrusted to the office by these organs. The Executive Director or the Inspector General shall make an annual report to the Wazir Regional Council on the work of the Convention.

## Article 99

The Executive Director or the Inspector-General may bring to the attention of the Wazir Regional Council any matter which in his opinion may threaten the maintenance of international peace and security.

## Article 100

1. In the performance of their duties the Executive Director, the Inspector-General, and the staff shall not seek or receive instructions from any government or from any other authority external to the Convention. They shall refrain from any action which might reflect on their position as regional officials responsible only to the Wazir Regional Council of the Convention.
2. Each Member State undertakes to respect the exclusively regional character of the responsibilities of the Executive Director, or the Inspector-General, and the staff and not to seek to influence them in the discharge of their responsibilities.

## Article 101

1. The staff shall be appointed by the Executive Director under regulations established by the Executive Director in cooperation with the Council.
2. Appropriate staff shall be permanently assigned to the Economic and Social Council, the Trusteeship Council, and, as required, to other organs of the Security Council of Defense. These staff shall form a part of the Secretariat.
3. The paramount consideration in the employment of the staff and in the determination of the conditions of service shall be the necessity of securing the highest standards of efficiency, competence, and integrity. Due regard shall be paid to the importance of recruiting the staff on as wide a geographical basis as possible.

# Chapter XVI: Miscellaneous Provisions
## Article 102

1. Every treaty, every regional agreement, and every international agreement entered by any Member States of the Convention after the present Convention comes into force shall as soon as possible be registered with the Secretariat and published by it,

2. No party to any such treaty, regional agreement, or international agreement which has not been registered in accordance with the provisions of paragraph 1 of this Article may invoke that treaty, regional agreement, or agreement before any organ of the Convention,

3. No State is allowed to become a party to the present Convention without the consent of a two-thirds majority vote of the Wazir Regional Council,

4. The present multilateral convention shall be open for signature by all interdependent Moorish States to become a Party to the Convention,

5. The present Convention is subject to ratification. The protocol instruments of ratification shall be deposited with the Office of the Secretariat,

6. The present Convention shall remain open for accession by any Moorish State,

7. The present Convention shall enter into force on the third day following the date of certified recognition from the Wazir Regional Council,

8. The Office of the Secretariat shall inform all Moorish States as to the newly recognized State.

## Article 103

In the event of a conflict between the obligations of the Member States under the present Convention and their obligations under any other international agreement, their obligations under the Act of Algeciras of 1906; Chapter VII shall prevail.

## Article 104

The Wazir Regional Council, its organs, and its staff shall enjoy in the territory of each of its Member States, non-Member States, in Morocco, and abroad, such legal capacity as may be necessary for the exercise of its functions and the fulfillment of its purposes.

## Article 105

1. The Wazir Regional Council, its organs, and its staff shall enjoy privileges and immunities as are necessary for the fulfillment of its purposes.

2. Representatives of the Member States of the Convention, the officials, diplomats, experts, and personal assistant staff of the Representatives shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connection with the Convention. The Wazir Regional Council in cooperation with the Executive Director and the Inspector-General may make recommendations with a view to determining the details of the application of paragraphs 1 and 2 of this Article or may propose conventions to the Members of the Convention for this purpose.

3. A list of names and titles shall be made available for any diplomatic or consular staff as a natural corollary with the Consular Notification and Access Manual.

# Chapter XVII: Transitional Security Arrangements
## Article 106

Pending the coming into force of such special agreements referred to in Article 43 as in the opinion of the Security Council of Defense in cooperation with the United States of Morocco Treaty Organization shall enable it to begin the exercise of its responsibilities under Article 42,

Affirming that the contracting parties to the bilateral Treaty of Peace and Friendship of 1786
& 1836, the multilateral Madrid Convention of 1880, and the multilateral Act of Algeciras of 1906, signed between the Empire of Morocco and the United States of America, shall in accordance with the provisions of the treaties; consult with one another.

Convinced that the General Assembly or the Security Council of the United Nations shall investigate allegations of human rights violations, inter alia, as may be necessary for the purpose of maintaining international peace and security in Morocco.  Moreover, the International Court of Justice *("case concerning rights of nationals of the United States of America in Morocco; Judgement of August 27, 1952")*, shall serve as case law and well settled principles in the Moorish Empire.

Recalling that in the year 1906, President Theodore Roosevelt of the United States international organization declared that *"[T]he Government of the United States of America, having no political interest in Morocco and no desire or purpose having animated it to take part in this conference other than to secure for all peoples the widest equality of trade and privilege with Morocco and to facilitate the institution of reforms in that country tending to insure complete cordiality of intercourse without and stability of administration within for the common good, declares that, in acquiescing in the regulations and declarations of the conference, in becoming a signatory to the General Act of Algeciras and to the Additional Protocol, subject to ratification according to the constitutional procedure, and in accepting the application of those regulations and declarations to American citizens and interests in Morocco..."*

## Article 107

Nothing in the present Convention shall invalidate or preclude action, in relation to any previous actions taken against a non-member State who becomes a new Member State of the Convention.  After the Wazir Regional Council votes to accept a new Member State by consent, then any past administrative action taken against the new Member State shall be expunged and deemed sealed records without prejudice.

# Chapter XVIII: Amendments

**Article 108**

Amendments to the present Convention shall come into force for all Member States of the Convention when they have been adopted by a two-thirds vote of the Wazir Regional Council and ratified in accordance with their respective constitutional processes.

**Article 109**

1. A General Conference of the Wazir Regional Council of the Convention for the purpose of reviewing the present Convention may be held at a date and place to be fixed by a two-thirds vote of the members of the Council.
2. Any amendment of the present Convention recommended by a two-thirds vote of the conference shall take effect when ratified in accordance with their respective constitutional processes after a two-thirds vote of the Wazir Council has been concluded.
3. If such a conference has not been held before the third annual session of the Wazir Regional Council meeting following the coming into force of the present Convention, the proposal to call such a conference shall be placed on the agenda of that session of the Council and the conference shall be held if so decided by a majority vote of the Wazir Regional Council.

# Chapter XIX: Ratification and Signature
**Article 110**

1. The present Convention shall be ratified by the signatory States in accordance with their respective constitutional processes.
2. The ratifications shall be deposited with the Office of the Secretariat ("Accessions Portal"), which shall notify all the signatory States of each deposit as well as the Executive Director of the Secretariat when he or she has been elected.
3. The present Convention shall come into force upon the deposit of ratifications by the State of Meru State Republic, the State of Allodium Moorish Praedium of New Mecca, the State of Allodium Moorish Praedium of Georgia, and the State of Allodium Moorish Praedium of Colorado. A protocol of the ratifications deposited shall thereupon be drawn up by the Office of the Secretariat of the

Convention which shall communicate copies thereof to all the signatory States.

4. The States signatory to the present Convention which ratify it after it has come into force will become original Members of the Multilateral Convention for the establishment of a Wazir Regional Council in the Moroccan Empire on the date of the deposit of their respective ratifications.

## Article 111

The original signatures to the present Convention shall remain deposited in the archives of the Government of Meru State Republic. Duly certified copies thereof shall be transmitted by that Government to the Governments of the other signatory States.

| The Signatory Parties are listed below. | |
| --- | --- |

In Faith Whereof the representatives of the Governments of the Assembly have signed and affixed their Seal to the present Convention in the Empire of Morocco to establish the Wazir Regional Council.

DONE at the Capitol of Meru State Republic on 30 January 2023.

*DocuSigned by:*

*DeAndre Dre Bey*

E6088EBA3E2C465...

For Meru State Republic Colorado: Wazir Al'rais, DeAndre Dre Bey

*DocuSigned by:*

*Amir Hassan*

DC276F0DE55A4C8...

For Allodium Moorish Praedium of New Mecca: Wazir Al'rais, Amir Hassan El

*DocuSigned by:*

*Abdul Bey*

4A47876D012C4ED

For Meru State Republic: Wazir Al'rais, Abdul Smith Bey

*DocuSigned by:*

*Aqil Bey*

530D1ED281A74B8

For Meru State Republic: Wazir Al'rais, Aqil Bey



**Filed in Clerk's Office**

MAY 1 6 2023

*Michael A. Brown*
CLERK LAKE SUPERIOR COURT

Michael A. Brown, Clerk
Lake County Superior Court, IN
2293 N Main St,
Crown Point, IN 46307

Demarcus Harris El, Hajib, Minister of Foreign Affairs
Meru State Republic (Ante Indiana)
Latitude: 40°16'24.6072" N by Longitude: -86°7'37.1116"
W.
c/o 5651 Coventry Lane
Fort Wayne, IN, [46804]

Date May 8, 2023

Michael A. Brown;

Having regard to the summons and court hearings with
Cedric G Parker (an artificial person) and **Amaris Maaz
Abdullah-Bey,** a Moroccan National of Meru State
Republic ante Indiana (MSR) a provincial State
Government in the Moroccan Empire, upon notice to the
court hearing of June 7th 2023 at 9:00am to be excused
and dismissed by said court.

In this connection, under Meru State Republic, jurisdiction

and office in allodium, act to enforce in reference to {Lake County Superior Court, state of Indiana and Michael A. Brown} (Agreements between the United States of America and Morocco) the Treaty of Peace and Friendship 1787 and 1836 article 20 and 21 & 22; the Treaty of Madrid 1880 Article 15 paragraph (1), the Act of Algeciras 1906 Articles 120, 121, 122 & 123, the Montevideo Convention on the Rights and Duties of States 1933 Articles 1, 3, 7, and 11 (regime-of-capitulations), and the depository pursuant to the United Nations Charter Articles 1(b), 55, 73, 75 & 102, inter alia.

Whereas a competent Moorish Consular Court is in fact, the proper venue for any dispute between a Citizen and a Moor, therefore, both civil and criminal jurisdiction shall extend to Moorish Consular Court Opinions, Orders, and Judgments as binding ministerial decrees with prejudice against or for the United States of America, the United states, its organs, chartered colonies, departments, entities, agents, persons, citizens, foreigners, and Moroccan subjects in Morocco, inter alia.

Finally, please take this opportunity to remove Cedric G Parker (artificial person) and **Amaris Maaz Abdullah-Bey** (Natural Person) form your list of current and future hearings and investigations against him. Provided along with this correspondence are the material facts illustrating that **Amaris Maaz Abdullah-Bey** is a National of Meru State Republic, a provincial State Government in the preexisting and existing Moroccan Empire.


I take this wonderful opportunity to express to your {Lake County Superior Court, state of Indiana and Michael A. Brown} my desire to maintain and strengthen the excellent relations, both official and personal between my State, your state and Missions.

Accept, {Lake County Superior Court, state of Indiana and Michael A. Brown} the assurance of my highest consideration and esteem.



Hajib, Minister of Foreign Affairs,

Demarcus Harris El
c/o 5651 Coventry Lane
Fort Wayne, IN, [46804]
E: HajibMSR@gmail.com I T:1.317.690.5421



**Filed in Clerk's Office**

SEP 27 2023

*Michael A. Brown*
CLERK LAKE SUPERIOR COURT

## Motion to Dismiss

**Failure to State a Claim Where Relief Can Be Granted**

CASE # 45D08-2203-CM-001177

Dear Judge,

I hope this letter finds you well. I am writing on behalf of CEDRIC GERARD PARKER, in response to the Complaint filed by the plaintiff, STATE OF INDIANA, in Lake County Superior Court. We respectfully submit this Motion to Dismiss for Failure to State a Claim where Relief could be Granted based on the following grounds.

### 1. Lack of Jurisdiction:

Upon reviewing the plaintiff's Complaint, it is evident that the defendant is neither an employee nor a citizen of the plaintiff. Furthermore, the defendant does not maintain any presence or conduct business within the jurisdiction of the plaintiff. As a result, the plaintiff's By Laws, Codes, or Statutes do not confer jurisdiction over the defendant in this matter.

### 2. Exemption from Liability:

Considering the defendant's non-employee and non-citizen status, they are exempt from being held accountable under the By Laws, Codes, or Statutes of the plaintiff. The absence of any legal obligation or relationship between the parties further supports the contention that the defendant cannot be subject to the jurisdiction of the plaintiff.



**3. Failure to State a Claim:**

Even assuming arguendo that the defendant were subject to the jurisdiction of the plaintiff, the

Complaint fails to state a claim upon which relief could be granted. The plaintiff has not

presented any specific allegations that would establish a viable cause of action against the

defendant. The plaintiff's Complaint lacks the necessary factual basis and legal elements to

support a claim against the defendant.

Based on the aforementioned grounds, we respectfully request that the Court consider this

Motion to Dismiss for Failure to State a Claim where Relief could be Granted. We believe that

the lack of jurisdiction, the defendant's exemption from liability, and the failure to state a claim

provide sufficient legal basis to warrant the dismissal of the plaintiff's Complaint.

Should the Court require any further information or documentation to support this Motion, we

are prepared to provide such upon request. We trust that the Court will carefully consider the

merits of this Motion and grant the requested relief.

Thank you for your attention to this matter. We look forward to the Court's ruling.

Sincerely,

Omari Kaffee Bey, Hajib,
Minister of Foreign Affairs
HajibMSR@gmail.com
(930) 465-1060

Counter Claim in Case # 45D08-2203-CM-001177

**Filed in Clerk's Office**

**SEP 27 2023**

*Michael A. Brown*
CLERK LAKE SUPERIOR COURT

Dear, Attorney General,

Cc: Judge - S. Moss

Lake County Superior Court

I hope this letter finds you well. I am writing to formally inform you of the intent to counter claim

in response to the allegations made against CEDRIC GERARD PARKER in the aforementioned

case #. I believe it is crucial to present our side of the story and provide evidence that supports

our position before our last course of action is taken.

1. Background Information: See Case File.

2. Counter Claim: I hereby assert the following counter claim against the plaintiff/defendant

STATE OF INDIANA: Racketeering, Conspiracy Against Rights & Deprivation of Rights Under

Color of Law.

3. Supporting Evidence: In support of my counter claim, I have gathered the following evidence:

a) "Treaty of Morocco", "The Act of Algeciras", "Constitution of The United States of America",

The United States Code & Trezevant v. City of Tampa, 241 F2d. 336 (11th CIR 1984)

4. Legal Basis: My counter claim is based on the following legal grounds: 18 usc 1963, 18 usc

242 and 18 usc 241.

5. Request for Relief: In light of the counter claim presented, I respectfully request the following

relief: See attached "Motion To Dismiss" & Fee Schedule: See "Trezevant v. City of Tampa, 241

F2d. 336 (11th CIR 1984)



6. Settlement Possibilities: While I firmly believe in the merits of my counter claim, I am open to exploring settlement possibilities to avoid protracted litigation. If the opposing party is willing to engage in meaningful negotiations, I am prepared to discuss potential resolutions as far as the "Fee Schedule". While the "Motion To Dismiss" is non negotiable.

7. Response Deadline: I kindly request that you respond to this counter claim within 7 business days from the date of this letter. Failure to respond within the specified timeframe may result in further legal action. Please consider this letter as my formal counter claim in the aforementioned case. I trust that you will give it the attention it deserves and provide a timely response. Should you require any additional information or documentation, please do not hesitate to contact me. Thank you for your attention to this matter.

Sincerely,

Omari Kaffee Bey, Hajib,

Minister of Foreign Affairs

hajibmsr@gmail.com

(930) 465-1060



Filed in Clerk's Office

OCT 17 2023

*Michael A. Brown*
CLERK LAKE SUPERIOR COURT

Case #
45D08-2203-CM-00177

# Notice of Fee Schedule

We are providing you with the fee schedule for legal encounters, accusations, and detainment involving our State and Nationals. It is essential to establish clear guidelines to ensure transparency and avoid any misunderstandings regarding legal fees.

Please note that the following fee schedule is applicable to all legal encounters, accusations, and detainment involving our State and Nationals:

1. Fee Structure:

   - $2,500 per minute

   - $100,000 per hour

   - $2,400,000 per day

2. Payment Terms:

   - All fees are due and payable within 10 days from the date of invoice.

   - Payments can be made via lawful money check, wire transfer and or asset transfer.

   - Late payments may incur additional charges and interest.

3. Billing and Invoicing:

   - Invoices will be provided upon completion of legal encounters, accusations, or detainment.

   - The invoice will include a detailed breakdown of charges, specifying the duration and corresponding fees.

   - Any additional expenses incurred during the legal process, such as travel, accommodation, or court fees, will be included and are the responsibility of the party at fault.

**4. Dispute Resolution:**

 - In case of any disputes regarding fees, both parties agree to engage in good faith negotiations to resolve the matter amicably.

 - If a resolution cannot be reached, the dispute may be submitted to mediation of a competent court.

Please note that the fee schedule mentioned above is subject to change based on the complexity, duration, or unique circumstances of each case. Any changes to the fee structure will be communicated promptly and in writing.

If you have any queries or require further clarification regarding this fee schedule, please do not hesitate to contact us.

Sincerely,

Omari Kaffee Bey, Hajib,
Minister of Foreign Affairs
hajibmsr@gmail.com
(930) 465-1060



**Filed in Clerk's Office**

**SEP 27 2023**

*Michael A. Brown*
CLERK LAKE SUPERIOR COURT

Meru State Republic

Wazir Al'Rais Appointment Letter

Greetings,

I, Aqil Zefan Yazeen Bey as Wazir Al'Rais (Prime Minister) of Meru State Republic, am pleased to appoint Omari Kaffee Bey as the Hajib (Minister of Foreign Affairs) of Meru State Republic. The Circle 7 State of Facts will be emailed to you so that you may review the terms and conditions established thus far. If you are willing to accept this appointment, please sign the appointment agreement. Your duties as Hajib (Minister of Foreign Affairs) will be discussed with you on the date of you becoming an official of Meru State Republic.

Date Appointed: September 2023

Welcome to Meru State Republic we look forward to uplifting fallen humanity with you!

*Aqil Zefan Yazeen Bey*

Wazir Al'Rais (Prime Minister),

Meru State Republic



GINA PIMENTEL
RECORDER
STATE OF INDIANA
LAKE COUNTY
RECORDED AS PRESENTED

**2023-025282**

3:56 PM    2023 Aug 30

# CERTIFICATE OF ASSUMED BUSINESS NAME

For persons (sole proprietorships, associations, or general partnerships)
Engaged in business under a name other than their own (DBA)

STATE OF INDIANA, COUNTY ___*LAKE*___

NAME OF BUSINESS ___*CEDRIC GERARD PARKER*___

NATURE OF BUSINESS ___*Private*___

ADDRESS OF BUSINESS ___*2850 Vermillion Lake Station, IN 46405*___

PRINTED NAMES AND RESIDENCES OF MEMBER OF BUSINESS:

*Amaris Maaz Abdullah-Bey* at *in care of 2850 Vermillion Lake Station IN [46405]*

_____ at _____

_____ at _____

_____ at _____

FORM PREPARED BY: ___*Amaris Maaz Abdullah-Bey*___

| *Amaris Maaz Abdullah-Bey* | *Amaris Maaz Abdullah Bey* | *Trustee/Owner* |
|---|---|---|
| Member's Signature | Printed Name | Capacity |

Filed on ___*August 30, 2023*___    ___*Regina M. Pimentel*___, Recorder

*(handwritten left margin)* Amending Document # 2021-025936

25